**NORTHPOINTE PLAZA, a Minnesota Partnership consisting of Jon K. Finstrom and John A. Klop, Jr., Appellant,**

v.

**CITY OF ROCHESTER, Respondent.**

**No. C3–89–1851.**

Court of Appeals of Minnesota.

June 12, 1990.

Review Granted Aug. 23, 1990.

Thomas B. Humphrey, Jr. and Andrew J. Mitchell, Larkin, Hoffman, Daly & Lindgren, Bloomington, and Robert G. Suk, Rochester, for appellant.

Frederick S. Suhler, Jr., Rochester City Atty., Rochester, for respondent.

Carla J. Heyl, League of Minnesota Cities, St. Paul, for amicus curiae League of Minnesota Cities.

Considered and decided by FOLEY, P.J., and HUSPENI and LESLIE,* JJ.

## OPINION

HUSPENI, Judge.

The trial court originally held appellant, a property owner, entitled to recover $65,081.33 in damages, $38,925 in attorney fees, and $1,876.44 in costs and disbursements from respondent, a city, on the grounds that the city's arbitrary denial of a conditional use permit (CUP) for appellant's property was a violation of appellant's right to substantive due process and was actionable under 42 U.S.C. § 1983. Respondent moved for amended findings or for a new trial. Because the local federal district court had recently held that arbitrary zoning decisions are not violations of substantive due process rights under 42 U.S.C. § 1983, the trial court then amended its original conclusions of law and judgment to hold that appellant should not recover from respondent. We affirm.

## FACTS

Appellant Northpointe Plaza had arranged a tentative sale of a parcel of property contingent on respondent City of Rochester granting Superamerica a CUP to build and operate a gas station and convenience store on the property. The Rochester planning and zoning commission denied the CUP in November, 1985, but the zoning board of appeals reversed and granted it in December, 1985. Neighborhood residents opposed the granting of the CUP; they appealed the decision to the common council, which reversed the board of appeals and denied the CUP in January, 1986. On February 21, 1986, appellant filed a complaint in the trial court in which he prayed for a writ of mandamus to the city to issue a zoning certificate permitting the facility to be built; for declaratory judgments that the common council's deni-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

al of the CUP was void, that the use was permitted, and that appellant was entitled to a zoning certificate without a CUP; for judgments against respondent in excess of $50,000 for violations of appellant's substantive and procedural due process and equal protection rights under 42 U.S.C. § 1983, for tortious interference with appellant's contract with Superamerica, for punitive damages, and for attorney fees.

After the common council denied the CUP in January, 1986, Superamerica declined to buy the property, for which they had offered to pay $355,000.00. Appellant eliminated the possibility of injunctive relief by reopening his efforts to sell the land. He found another potential purchaser who agreed to a price of $312,500.00. In June, 1986, appellant John A. Klop went with a PDQ representative to a meeting of the planning and zoning commission.[1] They sought and were granted a CUP to build and operate a gas station and convenience store. The sale of the land to PDQ was closed in September, 1986. By the time of the trial in December, 1988, the PDQ facility was in operation, the punitive damages claim had been dropped and the writ of mandamus rendered moot by the grant of the CUP and the sale of the property. The trial court concluded that appellant had a protectible interest in the CUP and could therefore bring an action under 42 U.S.C. § 1983; that the denial of the CUP was arbitrary and irrational; that the denial violated the substantive due process rights but neither the procedural due process nor the equal protection rights; that since the contract was contingent there was no interference; and that appellant was entitled to attorney fees as well as to damages for the violation of the substantive due process rights.

However, the trial court subsequently amended its judgment because it believed *Queen Anne Courts v. City of Lakeville*, 726 F.Supp. 733 (D.Minn.1989), to be controlling. *Queen Anne* held that the arbitrary denial of a zoning permit does not constitute a violation of substantive due process rights. Appellant was accordingly denied any recovery from respondent.

## ISSUES

1. Was respondent's denial of the CUP arbitrary and irrational?

2. Does appellant property owner have a protectible property interest in a CUP applied for by a prospective purchaser whose purchase is contingent on the grant of the CUP?

3. Does the arbitrary and irrational denial of a CUP rise to the level of a substantive due process violation under 42 U.S.C. § 1983?

4. Should a state court follow a federal district court's construction of a federal statute?

## ANALYSIS

1. The standard of review for the decision made by the common council of respondent City of Rochester to deny a CUP to Superamerica was set forth by this court in *St. Croix Development, Inc. v. City of Apple Valley*, 446 N.W.2d 392, 397 (Minn. App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989):

> This court must make an independent examination of the zoning agency's record and decision without according any special deference to the same review conducted by the trial court. * * *
>
>      *     *     *     *     *     *
>
> * * * [This accords with] the supreme court's mandate that the appellate function in rezoning cases is to review the decision of the local governing body, not that of the district court.
>
>      *     *     *     *     *     *

The standard of review in all zoning matters is whether the local authority's action was reasonable. This standard is variously expressed as: is there a "reasonable basis" for the decision; is the

---

**1.** The membership of the commission had changed: of the seven members present for the November, 1985 meeting, only three were at the June, 1986 meeting; of the five who voted to deny the CUP to Superamerica, only two remained, and they opposed granting the CUP to PDQ.

decision "arbitrary and capricious;" or, is the decision "reasonably debatable?" (Citations omitted.) It is respondent's denial of the CUP, not the trial court's determination that this denial was arbitrary, which is before this court.

The major objections to the Superamerica station were its presumed effect on traffic and its unsuitability to the neighborhood. The only evidence supporting its negative effect on traffic was provided by a letter from a district engineer for the Minnesota Department of Transportation. However, this evidence was questionable, first because the engineer was himself one of the neighbors who had signed a petition opposing the CUP, and secondly because his department had no involvement with this property. Evidence that there would be no negative effect on traffic was provided to the common council by a Minneapolis firm specializing in traffic analysis, which made specific findings that there was compliance with the traffic and safety requirements of respondent's zoning code and that the potential problems envisioned by neighbors would not occur. This evidence was found to be credible by the trial court and we agree.

■ There was considerable neighborhood objection to the Superamerica facility, perhaps because appellant had originally expressed an intention to construct a small "strip" shopping mall, to be known as "Northpointe Plaza," on the site, which met with neighborhood approval, and neighborhood expectations of a strip mall were not met by a Superamerica station. However, mere neighborhood opposition to this use of the land was not a sufficient reason for the denial.

[D]enial of a conditional use must be based on something more concrete than

neighborhood opposition and expressions of concern for public safety and welfare. *Chanhassen Estates Residents Association v. City of Chanhassen,* 342 N.W.2d 335, 340 (Minn.1984), *quoted in Chase v. City of Minneapolis,* 401 N.W.2d 408, 412 (Minn.App.1987). In fact, if an applicant for a CUP complies with the requirements, "[s]ubject to such compliance, approval of a permitted use follows as a matter of right." *Chanhassen Estates,* 342 N.W.2d at 340. The minutes of the common council meeting for January 21, 1986, reflect that Superamerica had altered its plans so as to comply with all respondent's requirements, but that there was still considerable neighborhood opposition to the CUP.

■ We conclude that respondent's denial of the CUP was based not on the failure of Superamerica to meet the requirements, but rather on neighborhood opposition. Neither this opposition nor the traffic concerns were an adequate basis for a denial. Therefore, the action of the common council was arbitrary and irrational.[2]

■ 2. We reject respondent's contention that since it was Superamerica, not appellant, who applied for the CUP, appellant had no property interest in it. "A conditional use permit shall remain in effect as long as the conditions agreed upon are observed * * *." Minn.Stat. § 462.3595, subd. 3 (Supp.1985). Appellant owned the land to be affected by the permit which, if granted, would run with the land and bind any subsequent purchaser. Consequently, appellant's ability to sell the land was conditional upon the granting of the CUP. It is difficult to discern how Superamerica could have a protectible property interest in land which it did not own, and had no intention of leasing. The protectible property interest was not Super-

---

**2.** We specifically reject the trial court's determination that the grant of the CUP six months later was also arbitrary and irrational. Factually, the subsequent grant was made by a body with substantially different membership from that which first denied the CUP to appellants. Even had the membership been the same,

[t]hese actions by the council merely involved changes of policy from time to time, and a mere change of policy, however unfortunate

the result may be, will not justify the court in declaring zoning ordinances * * * to be void. *Kiges v. City of St. Paul,* 240 Minn. 522, 532, 62 N.W.2d 363, 370–71 (1953). Further, disapproval of the actions of a zoning board is best shown through the ballot box. Holding a decision to be arbitrary merely because it conflicts with an earlier or a later decision would frustrate the decisions made by the voters in board membership elections.

america's but appellant's. The question remains, however, whether the denial of this CUP violated appellant's constitutional right to substantive due process under 42 U.S.C. § 1983.

■ 3. Whether a zoning action rises to the level of a violation of the right to substantive due process is a question of first impression in Minnesota.[3] The supreme court addressed but did not resolve the question in *Snyder v. City of Minneapolis*, 441 N.W.2d 781 (Minn.1989). While the supreme court stated:

> To succeed [under 42 U.S.C. § 1983, appellant] must show a person acting under color of state law deprived him of a protected property interest in violation of his constitutional rights * * *

*id.* at 791, it also stated:

> It is unclear if a cause of action for a substantive due process violation of [appellant's] right to a fair variance hearing exists under § 1983 * * *.

*Id.* at 792. The supreme court continued:

> Even if we were to recognize that such a cause of action exists, which we do not, there are problems with proof of damages.

*Id.* The inability of the *Snyder* plaintiff to prove damages led to the denial of his substantive due process claim; hence, *Snyder* never reached the issue of whether a city's arbitrary zoning decision could support such a claim. *Snyder* is distinguishable from this case because appellant here has clearly documented damages. Therefore, this court must address the issue of whether a zoning action rises to the level of violation of a substantive due process right.

The Minnesota Supreme Court in *Snyder* was aware that the eighth circuit had addressed the substantive due process issue:

> *Littlefield* [*v. City of Afton*, 785 F.2d 596, 607 (8th Cir.1986) ] * * * held that a substantive due process claim was stated when a municipality acted arbitrarily and capriciously in denying a conforming

land use proposal a building permit. *Littlefield*, 785 F.2d at 607. Subsequently, in *Lemke v. Cass County Nebraska*, 846 F.2d 469, 470–471 (8th Cir.1987), the eighth circuit, sitting en banc, reconsidered *Littlefield* and the substantive due process question and said it was an open question in this circuit. Five of the nine judges in *Lemke*, concurring, said *Littlefield* was without precedential value on this point. *Id.* at 473.

*Snyder*, 441 N.W.2d at 792. Here, the trial court in its original judgment observed that, notwithstanding *Lemke*, *Littlefield* was still good law, and adopted the *Littlefield* holding that

> the denial of a building permit under some circumstances may give rise to a substantive due process claim. We hold therefore that appellants stated a substantive due process claim when they alleged that the City acted capriciously and arbitrarily * * *.

*Littlefield*, 785 F.2d at 607.

We agree with the trial court that *Lemke* did not overrule *Littlefield*. However, following *Littlefield* while ignoring *Lemke* results in an incomplete view of the case law. The Minnesota Supreme Court in *Snyder* cited both *Littlefield* and *Lemke*, including the concurrence in the latter case. This concurrence provides an analysis of the doctrine of substantive due process:

> Accepting, then, that there is such a thing as substantive due process, we must decide what the limits of the concept should be, particularly in cases of zoning decisions, which occur thousands of times every day in this country. I start with the proposition that the concept should be strictly limited. We judges must be vigilant against the very real human tendency to expand power, to use general constitutional phrases to write into law our own policy preferences or ideas of fairness. * * *

> \* \* \* \* \* \*

**3.** In *Winnick v. Chisago County Board of Commissioners*, 389 N.W.2d 546, 548 (Minn.App. 1986), we considered the question not of substantive but of procedural due process, holding

that since appellant had been granted a post-deprivation hearing, there was no taking of property without due process, and no cause of action under 42 U.S.C. § 1983.

I am not prepared to say, then, that a denial of a zoning application, or similar governmental permission, can *never* rise to the level of a substantive-due-process claim. Such claims should, however, be limited to the truly irrational * * * .
This reading of substantive due process would exclude complaints like the present one—simple rote allegations that the zoning decision is arbitrary and capricious. Such a claim is easily made in every zoning case * * * .

\*     \*     \*     \*     \*     \*

* * * Conceding that there is such a thing as substantive due process[,] * * * I would hold that something more is required to state a claim than the allegation that a governmental decision is arbitrary, capricious, an abuse of discretion, or otherwise in violation of state law.

*Lemke*, 846 F.2d at 471–73 (Arnold, J., concurring) (emphasis in original). The thrust of the *Lemke* concurrence is against "turn[ing] the federal district courts into zoning boards of appeals." *Id.* at 472. Turning state appellate courts into zoning boards of appeal would be equally inappropriate, yet such a result would be inevitable if zoning decisions were elevated to civil rights claims.

■ 4. After the trial court's original holding that appellant's substantive due process rights had been violated by the denial of the CUP, the federal district court in Minnesota issued *Queen Anne Courts v. City of Lakeville*, 726 F.Supp. 733 (D.Minn. 1989), which had facts very similar to this case. Identical allegations of denial of substantive due process were made in each case in an attempt to prove a violation of section 1983. The *Queen Anne* court stated:

[Appellant] alleges that the zoning decision was arbitrary and irrational for numerous reasons, including: * * * the City bowed to neighborhood opposition, the City ignored its own studies and zoning classifications, [and] the City had no factual basis for its decision.
None of these allegations rise to a sufficient level to state a claim for substantive due process.

*Queen Anne* at 738. The trial court here perceived the similarities of the two cases, felt obligated to follow the *Queen Anne* decision, and rescinded its award to appellant. The memorandum accompanying the trial court's amended conclusions of law and judgment states:

[I]n *Queen Anne* the court specifically held that allegations that a city bowed to neighborhood opposition, ignored its own studies, and had no factual basis for making its zoning decision do not rise to a level sufficient to state a claim for substantive due process.
* * * [G]iven the decision in *Queen Anne*, the Court feels its hands are tied. * * * [I]t has no choice but to follow it because federal courts' constructions of federal statutes are binding on state courts.

(Citation omitted.) Even though the trial court did not agree with *Queen Anne*, it believed the case was controlling. We conclude that the trial court was not bound by *Queen Anne*. In a case addressing conflicting interpretations of a federal statute by the Minnesota Supreme Court and the Eighth Circuit Court of Appeals, this court noted that while federal court authority is persuasive regarding federal statutes, state courts are bound only by decisions of the United States Supreme Court. *Jendro v. Honeywell, Inc.*, 392 N.W.2d 688, 691 n. 1 (Minn.App.1986), *pet. for rev. denied* (Minn. Nov. 19, 1986).

Here, there is no conflict between state and federal interpretations. The *Queen Anne* holding does not oppose a Minnesota Supreme Court decision; it rather addresses an issue which the supreme court did not decide in *Snyder*.

■ While *Queen Anne* did not obligate the trial court to amend its judgment, the decision to harmonize the two cases accorded with the public policy of having state courts refrain from recognizing constitutional causes of action which the federal courts have denied. As one commentator has urged:

[W]here § 1983 claims are in fact submitted to and heard by state courts, it is

clear that relevant § 1983 substantive rules must be applied by those courts. S.H. Nahmod, Civil Rights and Civil Liberties Litigation 25 (2nd edition 1986) (footnote omitted). The accompanying footnote reads: "These substantive rules include the elements necessary for the prima facie § 1983 cause of action." Once a lower federal court has determined that a particular set of circumstances does or does not provide a prima facie section 1983 cause of action, we believe it appropriate that individual states follow that determination.

> The meaning of § 1983 is thus a "pivotal question of federal law," the resolution of which will be essential to determining whether [appellant] will have established a prima facie case.
>
>     \*      \*      \*      \*      \*      \*
>
> If the question of what constitutes probable cause to bring a § 1983 action is determined according to state law, there is a possibility that the standard will be set so high in some state courts as to permit malicious prosecution suits to be brought in response to legitimate § 1983 actions.

*Sweeney v. Abramovitz,* 449 F.Supp 213, 216 (D.Conn.1978) (citation omitted). The converse of the proposition set forth in *Sweeney* is also tenable. Recognition in state courts of a prima facie case based on circumstances which have already been deemed inadequate in federal court could result in consequences as unacceptable as those set forth in *Sweeney.*

Further, the United States Supreme Court has held that state courts must follow federal courts in allowing attorney fees in section 1983 actions.

> Several states \* \* \* argue that even if § 1988 [the Civil Rights Attorney's Fees Awards Act] applies to § 1983 claims \* \* \*, it does not apply in state courts. There is no merit to this argument. \* \* \* [T]he fee provision is part of the § 1983 remedy whether the action is brought in state or federal court.

*Maine v. Thiboutot,* 448 U.S. 1, 10–11, 100 S.Ct. 2502, 2507–08, 65 L.Ed.2d 555 (1980) (citations and footnotes omitted). If state courts are not free to decide for themselves whether attorney fees are to be awarded in a section 1983 action, it would be incongruous for them to run counter to federal courts in deciding whether a section 1983 cause of action exists.

Finally, we note that the *Lemke* concurrence said of arbitrary and capricious zoning claims:

> Such a claim is easily made in every zoning case, and is the stuff of which state administrative law is made. The state courts are open to hear, and do hear, such claims routinely.

*Lemke* at 472. We do not read the *Lemke* concurrence as arguing that state courts should accept section 1983 causes of action which federal courts deny. Rather, we believe the concurrence recognized that state courts are the appropriate fora to provide equitable remedies to victims of arbitrary zoning decisions. Here, appellant sought and found another purchaser for its land, and assisted that purchaser in obtaining the CUP which had been denied previously. Appellant's own action in selling the property to PDQ served to preclude the possibility of equitable relief based on the earlier denial of the CUP. The ability of the state court system to perform the function described by the *Lemke* concurrence was foreclosed.

Appellant should not now be permitted to seek money damages in the state court when the federal court has determined that the facts and circumstances set forth by appellant do not rise to a section 1983 claim.

## DECISION

The trial court properly determined that the arbitrary denial of a conditional use permit does not rise to the level of a substantive due process violation under 42 U.S.C. § 1983.

Affirmed.