**NORTHPOINTE PLAZA, a Minnesota partnership consisting of Jon K. Finstrom and John A. Klopp, Jr., Appellant,**

v.

**CITY OF ROCHESTER, Respondent.**

No. C3–89–1851.

Supreme Court of Minnesota.

Feb. 22, 1991.

Thomas B. Humphrey Jr., Andrew J. Mitchell, Larkin, Hoffman, Daly & Lindgren, Ltd., Bloomington, Robert G. Suk, Rochester, for appellant.

Fredrick S. Suhler Jr., Rochester City Atty., Rochester, for respondent.

YETKA, Justice.

This case comes before us on an appeal from a decision of the court of appeals which affirmed a trial court decision denying appellant damages allegedly suffered by appellant when the City of Rochester denied a conditional use permit (CUP) for its property. Appellant's action was based on an alleged violation by the city of appellant's due process rights under 42 U.S.C.

§ 1983. We affirm both the trial court and the court of appeals.

A brief statement of facts is necessary. On June 24, 1985, appellant, Northgate Plaza, a partnership consisting of Jon Finstrom and John Klopp, Jr., had arranged a tentative sale of a parcel of property to Ashland Oil, Inc., contingent on respondent, City of Rochester, granting to Superamerica, a subsidiary of Ashland Oil, a CUP to build a gas station and convenience store on the property. At the time the parties entered the agreement, the property was zoned as B1–b (neighborhood business) classification. In order to construct an "automotive service" on the B1–b site, the parties had to obtain a CUP pursuant to Rochester Code of Ordinance (R.C.O.) 61.301. This ordinance provides that a CUP shall not issue unless the Rochester Planning and Zoning Commission determines that:

a. The proposed use will not be detrimental to or endanger the public health, safety, convenience, or general welfare;

b. The proposed use will not be injurious to the use and enjoyment of other property in the neighborhood and will not significantly diminish or impair the values of such property;

c. The proposed use will not impede the normal and orderly development and improvements of the surrounding property;

d. Adequate utilities, parking, drainage, and other necessary facilities will be provided;

e. Adequate ingress and egress will be provided to minimize traffic congestion in the public streets;

f. The traffic generated by the proposed use can be safely accommodated on existing or planned street systems;

g. Adequate measures have been taken or proposed to prevent or control offensive odor, fumes, dust, noise, vibration, or lighting which would otherwise disturb the use of neighboring property; and

h. The applicant for the conditional use will agree to such limitations or conditions as may be deemed appropriate by the approving body, including, but not limited to, such matters as location, construction, maintenance, landscaping, operation, and duration.

R.C.O. 61.301.

The planning and zoning commission denied Superamerica's CUP request in November 1985, but the zoning board of appeals reversed and granted it in December 1985. Neighborhood residents opposed the granting of the CUP. A resident appealed the board's decision to the common council, which reversed the board and denied the CUP in January 1986. The council's expressed basis for denying the CUP for the project was applicant's failure to satisfy conditions (a) through (e) of R.C.O. 61.301.

The major objections to Superamerica's CUP were traffic concerns and the unsuitability of the project to the neighborhood. The only evidence before the council supporting the traffic concerns arising from the project was a letter from Roy Larson, a district engineer for the Minnesota Department of Transportation. Mr. Larson was not a qualified expert as he admitted that his agency "had no direct involvement" with the property in question. He also had a direct conflict of interest in the case as he was a member of the residential opposition group, 37th Street Neighbors' Association; was a property owner in the affected area; and even signed petitions opposing Superamerica's CUP. On the other hand, respondent submitted two reports from a traffic consultant whom the city had previously used on other projects and who concluded that the project would not have a significant impact on traffic and would present no safety concerns. The Olmsted County Consolidated Planning Department staff report also found the application in compliance with R.C.O. 61.301 and, subject to several conditions later agreed to by Superamerica, recommended approval of the application. The council accepted Larson's opinion that traffic problems were presented by the project and completely mischaracterized the planning department's staff report as being opposed to the CUP's while dismissing Superamerica's consul-

tant's contrary reports as based on faulty assumptions that proposed intersection improvements had already been made and that increased ingress and egress would not disrupt traffic.

The objections expressed by the residents were: traffic congestion; size of the project; its desirability as a "neighborhood business"; its proposed 24–hour-a-day operation; increased noise levels; and decrease in nearby residential property values. No experts were used to substantiate the residents' objections. Relying on the neighborhood's concerns, the council cited the "purpose" of the B1–b zoning classification found in R.C.O. 65.202[1] to deny Superamerica's CUP, concluding that the project, as neither "required" nor "desirable," did not fit within this purpose.

After the common council denied the CUP in January 1986, Ashland Oil declined to buy the property, for which they had offered to pay $355,000. Appellant found another potential purchaser who agreed to a price of $312,500. The trial court found that in June 1986, within 6 months of Superamerica's CUP denial, the planning and zoning commission granted a CUP allowing the new owner to build "not only a gas station/convenience store on the site, but a shopping center as well." This use had the potential of producing more traffic than Superamerica's proposed use. In fact, appellant's expert offered uncontroverted testimony that the existing development generates approximately 50 percent more traffic at peak hours than was estimated for the Superamerica proposal. The sale of the land to the new owner was closed in September 1986, and by the time of trial in December 1988, the "Rochester Convenience Center" had been built, complete with a PDQ gas station/convenience store, a restaurant with drive-through windows, a child care center, a dry cleaner, a chiropractor's office, a video rental store and two other retail establishments. The local residents apparently preferred the strip mall arrangement because they did not oppose the second application.

Appellant filed a complaint on December 24, 1987, consisting of seven causes of action, but by the close of trial, the existing theories of recovery were: (1) claims under 42 U.S.C. § 1983 alleging violations of procedural and substantive due process and equal protection rights; (2) a claim for tortious interference with contract; and (3) a claim for attorney fees pursuant to 42 U.S.C. § 1988. The Olmsted County District Court originally held that appellant was entitled to recover $65,081.33 in damages solely on the ground that the city's "arbitrary" denial of a CUP for appellant's property was a violation of appellant's right to substantive due process and was actionable under 42 U.S.C. § 1983 and awarded $31,140 in attorney fees and $1,876.44 in costs and disbursements pursuant to 42 U.S.C. § 1988. In a post-trial motion, respondent moved for amended findings or a new trial principally because the Minnesota federal district court, *Queen Anne Courts v. City of Lakeville*, 726 F.Supp. 733 (D.Minn.1989), had held in the interim that arbitrary zoning decisions are not violations of substantive due process rights under 42 U.S.C. § 1983. The Olmsted County District Court, believing this federal decision to be controlling, amended its original conclusions of law and judgment to hold that appellant should not recover from respondent, for the city's conduct was not one of the "egregious and extraordinary cases" which, under *Queen Anne*, implicates rights of the appellant guaranteed and protected by the United States Constitution.

The court of appeals, in affirming the lower court, found that the bases of the respondent's denial of the CUP—"traffic concerns" and "neighborhood opposition"— were "arbitrary," *Northpointe Plaza v. City of Rochester*, 457 N.W.2d 398, 401 (Minn.App.1990), and concluded that, while the court was not bound by *Queen Anne*, *id.* at 403, the "public policy of having state courts refrain from recognizing constitutional causes of action which the feder-

---

1. R.C.O. 65.202, in pertinent part, reads: "[It] is intended to permit selected businesses in areas adjacent to residential neighborhoods where analysis of the population demonstrate [sic] that such facilities are *required* and *desirable*." (Emphasis added.)

al courts have denied" encouraged adherence to *Queen Anne. Id.* Thus, the court of appeals followed *Queen Anne* in holding that a zoning decision which results in an arbitrary denial of a CUP does not rise to the level of a substantive due process violation. *Id.* at 404. This appeal followed. Appellant has since moved to strike respondent's effort first raised on appeal to contest the trial judge's findings that the city acted arbitrarily.

■ The issue raised on appeal is whether the City of Rochester's denial of Superamerica's application for a CUP constitutes a violation of appellant's constitutional right to substantive due process under 42 U.S.C. § 1983.

Whether a substantive due process claim may arise from a denial of a zoning permit is a question of first impression in Minnesota. While addressing but expressly leaving the question open in *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 792–93 (Minn.1989) (inability of plaintiff to prove damages led to denial of substantive due process claim), this court has specifically looked to the Eighth Circuit for guidance on the issue of whether a zoning action rises to the level of a violation of a substantive due process right. *Id.* at 792.

The test in the Eighth Circuit for determining whether there has been a violation of substantive due process in the context of section 1983 zoning actions is twofold: first, whether there has been a deprivation of a protectible property interest and, second, whether the deprivation, if any, is the result of an abuse of governmental power sufficient to state a constitutional violation. *Littlefield v. City of Afton*, 785 F.2d 596, 603–08 (8th Cir.1986).

■ Respondent does not challenge here the lower courts' rulings that appellant had a protectible property interest in the CUP. Minnesota recognizes a constitutionally protected property interest in an application for a land use permit which, as here, is conditioned only upon compliance with the zoning ordinance. *Snyder*, 441 N.W.2d at 791 (citing *Littlefield*, 785 F.2d at 602). Moreover, despite the common council's reliance on the "purpose" of B1–b

zoning to find Superamerica in non-compliance with the CUP requirements and presumably to find no protectible property interest, this court has held that where, as here, the applicant for a CUP complies with the specified permit requirements, "approval of a permitted use follows as a matter of right." *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn.1984); *see also Littlefield*, 785 F.2d at 601 (citing *Curry v. Young*, 285 Minn. 387, 397, 173 N.W.2d 410, 415 (1969)). Finally, though Superamerica actually applied for the CUP, the property interest in the CUP clearly runs with the affected land, Minn.Stat. § 462.3595, subd. 3 (1990), and thus appellant, as the property owner, held the protectible property interest.

Having determined that appellant has a protectible property interest in the CUP, the question is whether the city's conduct in denying the CUP violated appellant's constitutionally protected interest. Since the court of appeals decision in this case, the Eighth Circuit has expressly held that, in the zoning context, "[w]hether government action is arbitrary or capricious within the meaning of the Constitution turns on whether it is so 'egregious' and 'irrational' that the action exceeds standards of inadvertence and mere errors of law." *Condor Corp. v. City of Saint Paul*, 912 F.2d 215, 220 (8th Cir.1990) (citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Baker v. McCollan*, 443 U.S. 137, 147, 99 S.Ct. 2689, 2696, 61 L.Ed.2d 433 (1979) (Blackmun, J., concurring) (conduct challenged is not outrageous and does not shock the conscience); *Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir.1989) (substantive due process reserved for truly egregious violations); *New v. City of Minneapolis*, 792 F.2d 724, 726 (8th Cir.1986) (sufficiently egregious use of force states substantive due process claim)). *See also Weimer v. Amen*, 870 F.2d 1400, 1405 (8th Cir.1989) (to extend substantive due process doctrine into new areas, the conduct involved must "shock [the] conscience or otherwise offend other judicial notions of fairness"). In *Condor*,

plaintiff's substantive due process challenge to the city council for wrongfully denying a CUP for operation of a heliport on the basis of erroneous legal advice was thus defeated as a matter of law for failing to state a claim for relief under federal law. 912 F.2d at 220 (a misstatement of law constitutes "nothing more than a misjudgment of law, and clearly cannot be deemed arbitrary, capricious or so unreasonable to be egregious"). In addition, *Condor* clearly distinguished between the arbitrary and capricious threshold under Minnesota law and that same threshold under federal substantive due process by allowing the plaintiff's state claim to go forward. *Id.* at 221–24.

The essence of *Condor*, however, appears to be that a substantive due process claim in the zoning context exists, if at all, only in extraordinary situations and will not be found in "run-of-the-mill" zoning disputes. *See, e.g., Queen Anne*, 726 F.Supp. at 738. To the extent that *Condor* recognized a substantive due process claim in the zoning context, the case clarified *Lemke v. Cass County, Nebraska*, 846 F.2d 469, 470–71 (8th Cir.1987) (en banc), which held the issue to be open, and in establishing the "egregious" and "irrational" threshold for such a claim to be actionable, *Condor* qualified the Eighth Circuit's earlier ruling in *Littlefield*, 785 F.2d at 607, which found the municipality's "arbitrary" and "capricious" actions sufficient to state a claim for substantive due process.

The Eighth Circuit's establishment in *Condor* of the "egregious" and "irrational" threshold for substantive due process violations in the zoning context was foreshadowed by the concurrence—representing five of the ten judges—in *Lemke*, 846 F.2d at 473 (Arnold, J., concurring) ("I would hold that something more is required to state a claim than the allegation that a governmental decision is arbitrary, capricious, an abuse of discretion, or otherwise in violation of state law," such as the "truly irrational" zoning decisions, *e.g.*, "made by flipping a coin"), and the threshold is consistent with the standard adopted by previously decided lower federal district

court decisions within the Eighth Circuit. *See Queen Anne*, 726 F.Supp. at 738 (" 'the theory of substantive due process is properly reserved for truly egregious and extraordinary cases, and violations of state law, in and of themselves, are not actionable under 42 U.S.C. § 1983' ") (quoting *Myers v. Scott County*, 868 F.2d 1017, 1019 (8th Cir.1989)); *accord Hope Baptist Church v. City of Bellefontaine Neighbors*, 655 F.Supp. 1216, 1219 (E.D.Mo.1987).

As expressed by Judge Renner in *Queen Anne*, the higher threshold for recognizing a substantive due process violation in zoning claims is required to promote judicial and administrative efficiency:

> At the municipal level of government, zoning decisions are made daily and frequently. To allow the loser of each zoning decision, both those who seek a change and those who seek to block changes, to sue in federal court on bald allegations of arbitrariness would significantly burden both federal courts and local zoning decisionmakers.

726 F.Supp. at 738 (quoting *Hope Baptist*, 655 F.Supp. at 1219). In the words of the *Lemke* concurrence, adoption of a lower threshold would threaten to "turn the federal district courts into zoning boards of appeals," for the nature of zoning decisions is that they will always be susceptible to "simple rote allegations that the zoning decision is arbitrary and capricious." 846 F.2d at 472 (Arnold, J., concurring). *See also Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 833 (1st Cir.), *cert. denied*, 459 U.S. 989, 103 S.Ct. 345, 74 L.Ed.2d 385 (1982) ("*Every* appeal by a disappointed developer from an adverse ruling by a local * * * planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason." (Emphasis in original.)). Further, granting federal court intervention in the historically state matters of zoning issues disrupts the state's zoning decisionmaking processes. Note, *Federal Court Review of Arbitrary State Decisions*, 86 Mich.L.Rev. 2010, 2144 (1988).

Moreover, review of zoning board decisions is normally available in Minnesota courts.

Besides Judge Arnold's "flipping the coin" example of "truly irrational" decisionmaking, *Lemke*, 846 F.2d at 472 (Arnold, J., concurring), the Eighth Circuit has yet to clarify what is meant in this context by "egregious," "irrational" or "extraordinary." However, in all the circuits which have found substantive due process claims in zoning cases actionable, whether on a showing of "arbitrariness" and "capriciousness" or some higher threshold of conduct, as articulated in *Condor*, the level of conduct necessary to state such a claim has been, in fact, the higher threshold. For example, substantive due process claims have been found actionable in zoning cases only where the conduct of the decisionmaker was either motivated by personal or political animus, *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir.1988) (indefensible and impermissible political animus); *Bello v. Walker*, 840 F.2d 1124, 1129–30 (3rd Cir.), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988) (personal animosity toward political opponents); *Greenbriar v. City of Alabaster*, 881 F.2d 1570, 1579 n. 18 (11th Cir.1989) (personal animosity), or affected by the applicant's economic status, race or creed, *Scott v. Greenville County*, 716 F.2d 1409, 1419–20 (4th Cir.1983) (minority group housing).

Whatever is precisely meant by "egregious," "irrational" or "extraordinary" conduct, this threshold has not been reached by the city's conduct in this case. There is no evidence in the record that such a situation existed, and except for unsupported allegations of disparate treatment rejected by the district court, no such allegations were even made in the complaint.

Rather, the record reflects that, while the city's action in denying Superamerica's CUP was, at best, arbitrary,[2] it represented conduct ordinarily found in "run-of-the-mill" zoning disputes. *See Queen Anne*,

726 F.Supp. at 738. The city erroneously relied on an expert who had an obvious conflict of interest and who failed to study the project directly, *see Scott County Lumber Co. v. City of Shakopee*, 417 N.W.2d 721, 728 (Minn.App.), *petition for rev. denied* (Minn.1988), rejected the only credible expert studies and recommendations, and, in contravention of this court's express prohibition, based its decision in part on neighborhood opposition. *Chanhassen Estates Residents Assoc.*, 342 N.W.2d at 340. Furthermore, the city overlooked these same concerns in granting a CUP to the new owner on the same site for the same, if not expanded, purposes within 6 months of its denial to Superamerica. However, under analogous circumstances to this case, the *Queen Anne* court held that plaintiff's allegations of the city bowing to neighborhood opposition, ignoring its own studies and classifications, and having no factual basis for its decisions did not rise to the level of "egregious" and "irrational" conduct and, therefore, did not state a claim for a violation of federal substantive due process. 726 F.Supp. at 738. Here then too it appears that the city's denial of Superamerica's CUP was not actionable under section 1983. It seems to us that appellant's remedy lies with state law, not federal constitutional or statutory law.

Appellant's motion to strike portions of respondent's brief is mooted by the decision in this case.

The court of appeals is affirmed.

KEITH, C.J., and GARDEBRING, J., took no part in the consideration or decision of this matter.

---

2. City's arguments in its brief to the contrary are without factual support in the record and are not properly before this court as the city failed to file a timely conditional petition for further review. *See Karon v. Karon*, 435 N.W.2d 501, 505 n. 1 (Minn.1989) (Coyne, J., dissenting).