## UPPER MINNETONKA YACHT CLUB, Respondent,

v.

## CITY OF SHOREWOOD, Appellant.

No. A08–1869.

Court of Appeals of Minnesota.

July 28, 2009.

Considered and decided by KALITOWSKI, Presiding Judge; KLAPHAKE, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

In this land-use dispute, appellant argues that it has the inherent authority to amend respondent's CUP to reflect the representations that respondent made in its CUP application regarding its intended use of the property. Respondent contends that appellant cannot unilaterally amend its CUP. We affirm the district court's grant of summary judgment in favor of respondent.

## FACTS

Respondent Upper Minnetonka Yacht Club owns a marina in Shorewood. In 1969, appellant City of Shorewood granted respondent a three-year special-use permit that limited the number and types of boats that could be moored at respondent's marina. Specifically, the special-use permit provided that "30 sailboats" and "no more than 2 power boats" could be moored at the marina.

In 1977, appellant adopted new ordinances that required CUPs for the operation of marinas in Shorewood. Respondent applied for a CUP, requesting to use its marina as a mooring facility for "34 sailboat slips or lift spaces, 8 buoys, and 2 slips for Yacht Committee [motor] boats." In its CUP application, respondent indicated that the proposed use of the marina property was for "sailing" and that respondent provided "a service to families interested in sailing on the Upper Lake." After significant negotiations and several planning meetings, appellant issued a CUP to respondent that stated, in relevant part,

Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for respondent.

George C. Hoff, Justin L. Templin, Hoff, Barry & Kozar, P.A., Eden Prairie, MN, for appellant.

[t]hat upon and attached in conjunction with the use of said property may be located lifts, slips, docks, and buoys capable of storing and keeping not more than 30 boats during the docking season and such facilities shall not extend beyond 200 feet of the shoreline.

Unlike the special-use permit and contrary to the specific language contained in respondent's CUP application, the CUP did not limit the types of boats that could be moored in respondent's marina.

In 1992, respondent requested a variance from appellant to allow respondent to build a clubhouse on the marina. During negotiations and planning meetings, appellant's planning director suggested that, in exchange for the variance, respondent's CUP be modified to include a restriction on the types of boats that could be moored at respondent's marina. In particular, he suggested that the "[h]arboring of boats shall be limited to sailboats with the exception of one power boat used by the Club." Ultimately, no agreement could be reached between the parties and neither the variance nor the proposed modification to the CUP was executed.

In 2005, appellant received multiple complaints from residents near the marina that respondent was renting boat slips to power boats. Appellant notified respondent of the complaints and stated that the renting of slips to power boats was a violation of the CUP. Respondent, however, considered itself to be in compliance with the CUP because the CUP did not limit the use of the marina to sailboats. In late 2005, appellant directed respondent to remove any power boats from its marina, but the boating season ultimately ended without respondent taking any action.

At the beginning of the next boating season, appellant reiterated its position on power boats in the marina and gave respondent until June 5, 2006, to rectify the issue or face legal action. When respondent took no action, appellant filed a criminal complaint alleging that respondent's docking of power boats was an illegal intensification of a nonconforming use of the marina. After the submission of trial briefs and exhibits, respondent moved to dismiss the complaint. The district court granted respondent's motion, finding that, based on the plain language of the CUP and the 1992 variance negotiations between the parties, the CUP did not limit the use of the marina to sailboats.

In 2007, appellant's planning director asked the mayor and city council for authorization to proceed with a city-initiated amendment to respondent's CUP to prohibit the mooring of power boats. The city council authorized the planning commission to hold public hearings on amending the CUP. After the hearings, the city council adopted Resolution No. 07–067, amending the CUP by adding the term "sail" to the word "boats" as follows:

[t]hat upon and in conjunction with the use of said property may be located lifts, slips, docks, and buoys capable of storing and keeping not more than 30 *sailboats* during the docking season, and such facilities shall not extend beyond 200 feet of the shoreline.

(Emphasis added.)

Respondent filed a complaint in district court seeking to enjoin appellant from enforcing the amended CUP. The parties subsequently filed cross-motions for summary judgment. Respondent argued that the amendment was invalid and unenforceable. Appellant asserted that respondent originally applied for the CUP as a sailboat facility and continually postured itself as such; therefore, clarification of the CUP was required so that the CUP's text reflected respondent's stated intent to operate a sailboat facility. The district court granted respondent's motion for summary

judgment, holding that appellant could not unilaterally add a condition to the CUP. This appeal follows.

## ISSUE

Was it error for the district court to grant summary judgment in favor of respondent?

## ANALYSIS

■ Appellant challenges the district court's grant of summary judgment in favor of respondent. On appeal from summary judgment, we review the record to determine whether there is any genuine issue of material fact for trial and whether, in granting summary judgment, the district court committed an error of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We review "the evidence in the light most favorable to the party against whom [summary] judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Id.* There is no genuine issue of material fact when the evidence does not "permit reasonable persons to draw different conclusions." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997).

The moving party has the burden of showing the absence of a genuine issue of material fact. *Anderson v. State Dep't of Natural Res.*, 693 N.W.2d 181, 191 (Minn. 2005). To defeat a summary judgment motion, the nonmoving party cannot rely on denials or general averments, but must offer specific facts to show that there is a genuine issue of material fact for trial. *DLH, Inc.*, 566 N.W.2d at 69. No genuine issue of material fact exists when "the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *Id.* at 71; *see also Schroeder v. St. Louis County*, 708 N.W.2d 497, 507 (Minn.2006) (stating that "[a] party need not show *substantial evidence* to withstand summary judgment. Instead, summary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw different conclusions.").

■ A CUP is not a personal license, but a protected property right. *Northpointe Plaza v. City of Rochester*, 465 N.W.2d 686, 689 (Minn.1991); *Dege v. City of Maplewood*, 416 N.W.2d 854, 855–56 (Minn.App.1987). A CUP runs with the land and continues to encumber the property even after it is conveyed to subsequent owners. *Northpointe*, 465 N.W.2d at 689. As a result, a certified copy of any CUP must be recorded with the county recorder or registrar of titles. Minn.Stat. § 462.3595, subd. 4 (2008). CUPs are perpetual in nature and "remain in effect as long as the conditions agreed upon are observed." *Id.*, subd. 3 (2008).

Appellant argues that, contrary to the district court's finding, it has the inherent authority to amend respondent's CUP to reflect the representations that respondent made in its CUP application regarding the intended use of the marina property as a sailboat facility. In support of its position, appellant relies on *In re Block*, 727 N.W.2d 166 (Minn.App.2007). In *Block*, the county issued a CUP to a dog-breeding facility with the express condition that the dogs at the facility be "debarked." 727 N.W.2d at 173. After the CUP was issued, the coun-

ty received considerable opposition to the debarking condition. *Id.* at 172–73. Upon informal reconsideration, the county administrator and county attorney eliminated the condition that all dogs be debarked. *Id.* at 173.

On appeal, we held that the issuance of the CUP was arbitrary and capricious because the county did not take a "hard look" at the issue of debarking before imposing the debarking condition. *Id.* at 180. We then concluded that the county's informal elimination of the debarking condition was an informal amendment to the CUP and that the amendment was not issued in compliance with established amendment procedures. *Id.* at 182. But rather than reverse and remand on the narrow procedural issue, we recognized the inherent authority of an agency to reconsider its decision and we remanded so that the county could formally reconsider its issuance of the CUP. *Id.*

We find *Block* unavailing to appellant's argument. First, *Block* does not stand for the proposition that a city or county has the inherent authority to unilaterally amend a CUP. In *Block,* we specifically declined to remand on the issue of the CUP amendment. *Id.* Instead, we remanded so that the county could reconsider the *issuance* of a CUP that was arbitrarily and capriciously granted in the first instance. *Id.* Therefore, the inherent authority that we recognized in *Block* only relates to a city's or a county's authority to reconsider the issuance of a CUP that has been deemed invalid; it does not recognize any authority to unilaterally amend a valid CUP. *See id.* (remanding "for reconsideration of the application for the conditional use permit"). In fact, because a CUP is a protected property right that remains in

effect as long as its conditions are observed, any alleged authority to unilaterally amend a valid CUP is patently inconsistent with the perpetual nature of CUPs and their fundamental function.

Second, even if *Block* could be read to recognize a city's or a county's inherent authority to unilaterally amend a CUP, *Block* is factually distinguishable from the case at hand. In *Block,* the county's unilateral amendment relaxed one of the CUP's conditions and was not objected to by the CUP holder; whereas here, appellant's amendment adds a condition to the CUP and was vehemently disputed by respondent. Therefore, *Block* does not bear on the precise issue before us.

Additionally, *Block* relied on *In re N. Metro Harness, Inc.,* 711 N.W.2d 129, 136 (Minn.App.2006), *review denied* (Minn. June 20, 2006), for the proposition that the county had inherent authority to reconsider the issuance of the CUP. *Block,* 727 N.W.2d at 182. But *N. Metro Harness* only recognizes an agency's authority to reconsider an initial decision within the limited time before the appeal period runs on its decision. 711 N.W.2d at 135–36. And in *Block,* the county's unilateral amendment occurred less than a month after the CUP was initially granted. *Block,* 727 N.W.2d at 172–73. Here, however, appellant amended respondent's CUP approximately 30 years after the CUP was issued. *Block* provides absolutely no support for a unilateral amendment 30 years after a CUP's issuance.[1]

Appellant also relies on an unpublished opinion of this court, *Edling v. Isanti County,* No. A05–1946, 2006 WL 1806397 (Minn.App. July 3, 2006), in support of its claim that it has the authority to unilater-

---

1. Appellant asserts that it acted as swiftly as it could in amending the CUP in 2007, having only learned of respondent's alleged CUP violation in 2005. But under both *Block* and *N. Metro Harness,* even a two-year delay in reconsidering a CUP appears objectionable.

ally amend respondent's CUP. In *Edling,* this court upheld the revocation of a CUP where no express conditions of the CUP were violated, but the relator's land use far exceeded the scope of certain representations made during the application process. 2006 WL 1806397, at *3. But *Edling* involved particularly egregious facts that are not analogous to the facts of this case, and because *Edling* is an unpublished opinion, it is not binding authority. *See* Minn.Stat. § 480A.08, subd. 3(c) (2008); *Vlahos v. R & I Constr. of Bloomington, Inc.,* 676 N.W.2d 672, 676 n. 3 (Minn.2004). Further, unless an applicant's representations are actually recorded within the CUP, the representations are irrelevant because interested parties or future purchasers may have no notice of the representations and use restrictions on the property.

Finally, appellant directs this court to several cases that recognize a legislative body's authority to retroactively clarify legislation. *See, e.g., Rural Am. Bank of Greenwald v. Herickhoff,* 485 N.W.2d 702, 707 (Minn.1992); *Nardini v. Nardini,* 414 N.W.2d 184, 196 (Minn.1987); *Holman v. All Nation Ins. Co.,* 288 N.W.2d 244, 251 (Minn.1980). But these cases only address the general question of whether clarification acts and statutory amendments are retroactive; they do not concern the specific question raised here—whether a city or county can unilaterally amend a valid CUP.

Because a CUP is a protected property right that is perpetual in nature and runs with the land, the district court correctly concluded that appellant could not unilaterally amend respondent's CUP. Accord-

ingly, even when the facts are viewed in the light most favorable to appellant, appellant cannot establish a genuine issue of material fact regarding its authority to unilaterally amend respondent's CUP. Summary judgment, therefore, was properly granted to respondent.[2]

We note that there are several ways that appellant could have properly imposed a sailboat-only restriction on respondent's use of the marina. Appellant's planning commission could have sought to amend its current zoning ordinances to provide that marina use in Shorewood is limited to sailboats only. *See* Minn.Stat. § 394.301, subd. 3 (2008) (indicating that the statutory restriction on a local government's authority to invalidate a CUP is not intended to prevent zoning changes that may affect a CUP's status). Further, had appellant been able to establish that respondent violated the terms of an existing CUP condition, it could have taken remedial action. *See id.* ("A conditional use permit shall remain in effect for so long as the conditions agreed upon are observed...."); *State ex rel. Neighbors Organized in Support of the Env't v. Dotty,* 396 N.W.2d 55, 59 (Minn.App.1986) (noting that "a conditional use permit continues until its provisions are violated").

In addition, appellant could have sought a compromise with respondent and amended the CUP with respondent's consent. In fact, the parties successfully negotiated an amendment to the CUP in 1978, agreeing to remove the word "buoys" from the CUP, thereby preventing respondent from mooring buoys on its marina property.

---

**2.** By notice of review, respondent argues that, should this court conclude that summary judgment was improperly granted, we must consider whether appellant's decision to amend the CUP was arbitrary, capricious, or unreasonable. Additionally, respondent contends that, if we disagree with the district court's ruling, we must remand to the district court for consideration of respondent's counterclaims. Because we conclude that summary judgment was properly granted to respondent, we do not consider the claims raised by respondent on notice of review.

But because respondent did not consent to the sailboat-only restriction, and because there was no violation of the CUP's express conditions, appellant had no authority to unilaterally amend respondent's CUP by adding a sailboat-only restriction.

### DECISION

A CUP is a protected property right that is perpetual in nature and runs with the land. As a result, a CUP cannot be unilaterally amended absent a violation of its express conditions or without consent from both parties. Because respondent neither violated the express terms of the CUP nor consented to its amendment, the district court properly concluded that appellant could not unilaterally amend respondent's CUP. Accordingly, we affirm the district court's grant of summary judgment in favor of respondent.

**Affirmed.**