SUNRISE LAKE ASSOCIATION,
INC., Relator,

v.

CHISAGO COUNTY BOARD
OF COMMISSIONERS,
Respondent.

No. C8–01–35.

Court of Appeals of Minnesota.

Sept. 4, 2001.

Brian B. O'Neill, Elizabeth H. Schmiesing, Jonathan T. Haines, Faegre & Benson, LLP, Minneapolis (for relator).

David Wendorf, Wendland Timmerman, P.A., Blue Earth (for respondent Chisago County Board of Commissioners); and Barry L. Blomquist, Barry L. Blomquist Law Office, North Branch (for respondent Richard Gurtek).

Considered and decided by RANDALL, Presiding Judge, HALBROOKS, and HANSON, Judges.

## OPINION

HANSON, Judge

By writ of certiorari, relator appeals respondent-county's decision to grant a conditional-use permit for a seasonal recreation park, asserting that respondent property owner's proposed development constitutes a "manufactured home park," which is prohibited by the county's zoning ordinance. Because the county failed to state adequate reasons for issuing the conditional-use permit, and the units proposed to be installed in the park constitute manufactured homes, we reverse.

## FACTS

In October 2000, respondent Richard Gurtek applied to respondent Chisago County ("the county") for a conditional-use permit ("CUP") to develop a seasonal recreation park for senior citizens on his property bordering Sunrise Lake. Gurtek proposed to install 99 "park-model cottages" that he would sell to the residents, but he would retain ownership of the land and collect lot rentals. The development, which includes a park pavilion, activity area, storm shelter and boat ramp, would remain open only from May through September, and residents would not have access to the property during the closed season.

During a meeting of the Chisago County Planning Commission, one of the commissioners expressed her belief that the proposed cottages were manufactured homes. Gurtek's property is zoned agricultural, and the county's zoning ordinance prohibits manufactured-home parks in agricultural districts. The commissioner asked for clarification on the difference between "a manufactured home," as defined in the zoning ordinance, and the "park-model cottages" Gurtek intended to install.

In response, Gurtek submitted a letter from his consultant, Barr Engineering, which described the units by reference to an industry standard for a "recreational park trailer":

> [A] trailer type unit that is primarily designed to provide temporary living quarters for recreational, camping, travel, or seasonal use that * * * [is] built on a single chassis mounted on wheels * * *.

The Planning Commission reconvened to consider Gurtek's CUP application. The commissioner who had voiced her concern at the earlier meeting continued to maintain that Gurtek's proposed development was a manufactured home park, in violation of the zoning ordinance. The County Zoning Administrator responded that, according to Minnesota statutes, facilities that are open only seasonally are exempt from the definition of "manufactured home park." The commissioners voted four to

three to recommend Gurtek's CUP to the Chisago County Board of Commissioners.

The Board of Commissioners ultimately voted to "accept the report and recommendation of the Planning Commission" and approved Gurtek's CUP. By writ of certiorari, relator Sunrise Lake Association, Inc. ("Sunrise") appeals the county's decision. *See Dietz v. Dodge County,* 487 N.W.2d 237, 239 (Minn.1992) (noting judicial review of quasi-judicial administrative decisions must be invoked by writ of certiorari).

## ISSUES

1. Is the county's explanation of its reasons for granting the CUP sufficient to allow judicial review?

2. Does the proposed development meet the definition of a "manufactured home park," which is prohibited by the zoning ordinance?

## ANALYSIS

■ A county's decision to grant or deny a CUP is a quasi-judicial decision. *Neitzel v. County of Redwood,* 521 N.W.2d 73, 75 (Minn.App.1994), *review denied* (Minn. Oct. 27, 1994). The decision will be upheld unless it was unreasonable, arbitrary, or capricious. *Trisko v. City of Waite Park,* 566 N.W.2d 349, 352 (Minn. App.1997) (citation omitted), *review denied* (Minn. Sept. 25, 1997). A challenge to the approval of a CUP must meet a higher burden of proof than a landowner's challenge to a denial of a CUP. *Board of Supervisors v. Carver County Bd. of Comm'rs,* 302 Minn. 493, 499, 225 N.W.2d 815, 819 (1975).

### I. Adequate Findings/Reasons to Support the Decision

■ We first review the grant of a conditional-use permit to determine whether the county's explanation of its reasons for

granting the CUP are sufficient to allow judicial review. *See Honn v. City of Coon Rapids,* 313 N.W.2d 409, 416–17 (Minn. 1981) (stating decision-maker must give reasonable basis for zoning decisions); *see also White Bear Rod & Gun Club v. City of Hugo,* 388 N.W.2d 739, 742 (Minn.1986) (remanding for findings where city council's denial of special-use permit amendment lacked findings of fact or other explanation of its decision adequate for judicial review). In *White Bear Rod & Gun Club,* the supreme court stated:

> While the city council was not required to prepare formal findings of fact, it was, "at a minimum," required to "have the reasons for its decision recorded or reduced to writing and in more than just a conclusory fashion."

388 N.W.2d at 742 (quoting *Honn,* 313 N.W.2d at 416).

■ Measured by these standards, the county's actions are deficient. The minutes of its Board of Commissioners' meeting merely describe the county's action as to

> accept the report and recommendation of the Planning Commission from its December 14, 2000, meeting and to authorize the issuance of a conditional use permit to Richard Gurtek for a seasonal leisure park for seniors at his property on Sunrise Lake.

That description does not contain a sufficient statement of the reasons to grant the CUP, unless those reasons are contained in the referenced December 14 report or are implicit in the use of the words "seasonal leisure park for seniors."

The December 14 report does not provide appropriate findings or reasons to grant the CUP. The report indicates that the Planning Commission resolved the question whether the proposed use was for a prohibited manufactured home park by

relying on a supposed statutory exemption for "facilities which are open only during three or fewer seasons of the year."[1] But this statutory definition of a manufactured-home park is not referenced or incorporated in the county's zoning ordinance, and, accordingly, has no legal relevance to this zoning decision. Instead, this statutory definition is applicable only to the regulation of lot rentals for manufactured home parks. Thus, the reference in the minutes of the Board of Commissioners' meeting to the Planning Commission's report and recommendation does not provide adequate findings or a valid reason for the county's decision.

Likewise, the reference in the minutes to a "seasonal leisure park for seniors" does not provide an explanation of, or a lawful basis for, granting the CUP. Those words are not used in the zoning ordinance. They appear to be an attempt to paraphrase the seasonal exemption contained in Minn.Stat. § 327C.01, subd. 5, which does not apply to the zoning ordinance. As a result, the county's decision does not contain an adequate explanation of its reasons to allow judicial review and must be reversed.

## II. Lawful Basis for Granting a CUP

■ Ordinarily, we would remand to the county for appropriate findings. But the record before the Board of Commissioners does not provide a lawful basis for granting a CUP on Gurtek's present application because the application describes a development that is prohibited under the zoning ordinance.

■ Interpretation of a zoning ordinance presents a question of law, which we review de novo. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980). The county's zoning ordinance defines a "manufactured home" as:

A structure, transportable in one or more sections, which in the traveling mode, is eight body feet or more in width, or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and which is built on a permanent chassis and *designed to be used as a dwelling* with or without a permanent foundation when connected to the required utilities, and includes plumbing, heating, air conditioning, and electrical systems contained in it.

(Emphasis added.)

As noted above, the county cannot rely upon Minn.Stat. § 327C.01, subd. 5, to create a seasonal exemption to its definition of a manufactured home, since no such exemption appears in the zoning ordinance. The county's alternative arguments on appeal focus on whether the park units proposed by Gurtek are "designed to be used as a dwelling," a necessary element of the ordinance's definition of a manufactured home.[2]

The ordinance defines "dwelling" as

a building or portion thereof, designated exclusively for residential occupancy, including one-family, two-family, and mul-

---

1. The Planning Commission mistakenly cited to Minn.Stat. § 327.14, subd. 3, which had been replaced by Minn.Stat. § 327C.01, subd. 5 (2000).

2. In its brief, the county also argues that Gurtek's park units qualify as "seasonal cabins," which are exempted from the zoning ordinance's definition of the term "dwelling unit." Although the seasonal-cabin exception would likely include the proposed park units, the "dwelling unit" definition is not applicable because the words "dwelling unit" are not used in the definition of manufactured home. Counsel for the county conceded this at oral argument, when he acknowledged that "dwelling unit" did not apply because it was not referenced in the zoning ordinance's definition of a manufactured home.

tiple family dwellings, but not including hotels, motels, boarding houses, *mobile homes* or *trailers*.

(Emphasis added). The zoning ordinance fails to define either "mobile homes" or "trailers," and in reaching its decision to grant Gurtek's CUP, the county did not mention either of these exceptions. Because the terms "mobile homes" and "trailers" are not defined, the county perhaps enjoys some flexibility in giving meaning to those words. But reference to external sources, such as the Minnesota statutes, suggests to us that, at a minimum, "mobile homes" and "trailers" must have wheels and be capable of either being driven as or drawn by a motor vehicle. *Cf.* Minn.Stat. §§ 168.011, subd. 13 (2000) (defining "trailer" as "any vehicle designed for carrying property or passenger on its own structure and for being drawn by a motor vehicle"); 168.011, subd. 8(c) (2000) (defining "travel trailer" as "a trailer, mounted on wheels").[3]

The record before the Board of Commissioners does not contain a clear description of the proposed park units. Gurtek's consultant, Barr Engineering, referred to Standard A119.5 of the American National Standard Institute, which defines a "Recreational Park Trailer" as:

[A] trailer type unit that is primarily designed to provide temporary living quarters for recreational camping, travel or seasonal use that * * * [is] built on a single chassis *mounted on wheels* * * *.

But an industry news release attached to Barr Engineering's report describes several types of recreational park trailers, some of which are mounted on wheels and others of which are not. According to the literature, units that are 8′6″ or less in width are mounted on wheels and are "like

a traditional but slightly longer RV Travel Trailer," whereas "units that are wider than 8′6″ * * * must be transported by professionals with specialized equipment and state-issued highway permits."

The county could lawfully determine that units that are 8′6″ wide or less and mounted on wheels meet the "mobile homes" or "trailers" exception to the definition of a "dwelling" and, thus, are not a "manufactured home." But the wider units, which are not mounted on wheels, do not fit within the exception for "mobile homes" or "trailers." At oral argument before this court, counsel for Gurtek suggested that the proposed park units will be a mix of both types of park trailers. The floor plans for the proposed units submitted by Gurtek with his application for the CUP only illustrate units that are 11′10″ wide. There is no indication these units are mounted on wheels, and it appears they could only be moved by professionals and with state-issued highway permits. The inclusion of these units in the development, in whole or in part, makes it a prohibited mobile-home park. Accordingly, we reverse the grant of a CUP based on Gurtek's present application.

### III. Sunrise's Other Challenges

Sunrise raises other challenges to the CUP. Because these challenges may be relevant to any further application by Gurtek, we will address them briefly.

■ Sunrise argues that the zoning ordinance prohibits Gurtek's development, even if it were not a prohibited manufactured-home park, because it does not qualify as a permitted conditional use in an agricultural district. According to the zoning ordinance, where "a use is neither

---

**3.** Similarly, the county's attempt to define "mobile home" or "trailer" by analogy to the zoning ordinance's definition of a "recreational vehicle" presupposes a unit on wheels, capable of being driven as or drawn by a motor vehicle.

specifically permitted nor denied, the use shall be considered prohibited." The zoning ordinance sets out conditional uses for agricultural land, including: "Commercial outdoor recreation areas that are similar to public recreation areas including private campgrounds, golf course, swimming pools, and resorts." While Sunrise takes issue with whether Gurtek's development meets the specific definitions for "campground" or "resort," the terms "similar" and "including" indicate that the ordinance contains a non-exclusive list of examples of outdoor recreation areas. Given these broad terms, Gurtek's seasonal leisure-park development plausibly fits into the permitted conditional-use category of a commercial outdoor recreation area.

Sunrise contends that the county's Shoreland Management Ordinance prohibits the Gurtek development. Sunrise premises its argument on a statement made in the minutes to the November 21, 2000, public meeting: "The [Gurtek] proposal is also classified as a Planned Unit Development as permitted under Section 8.0 of Chisago County's Shoreland Management Ordinance." Sunrise correctly points out that planned unit developments (PUDs) are not listed among the permitted conditional uses in the agricultural zones. But Sunrise concedes that in granting Gurtek's application, the Board made no reference to the Shoreland Management Ordinance. Consequently, any argument that the Board erroneously approved Gurtek's development as a PUD is purely speculative.

Sunrise argues that a combined reading of the zoning ordinance and the county's comprehensive plan prevents approval of Gurtek's CUP application. Section 8.05 of the zoning ordinance outlines additional possible effects of the proposed CUP for the Planning Commission to consider. Without specifying which effects, Sunrise argues that many of these factors call for the rejection of Gurtek's application, including the Environmental Analysis Worksheet (EAW). But the Planning Commission did consider the EAW and determined that any concerns were sufficiently resolved. It properly concluded that an environmental-impact statement was not needed.

Sunrise argues that the county interferes with the comprehensive plan's goal to "[p]revent the unnecessary conversion of prime farmland to non-farm uses" and to "[p]revent incompatible land uses in the agricultural areas." Nothing in the record indicates that Gurtek's land is *prime* farmland. Moreover, the plan "is intended to be general in nature," and "[i]mplementation of the Plan will be accomplished through other official controls, particularly the County's zoning * * * ordinances." There is no evidence that Gurtek's development is incompatible with the comprehensive plan.

■ Finally, Sunrise argues that the Board of Commissioners acted arbitrarily and capriciously by "ignoring" its prior findings from 1987, when it denied Gurtek's first application for a special-use permit. *See Gurtek v. Chisago County,* No. CO–88–520, 1988 WL 81554, at *2 (Minn. App. Aug.9, 1988) (upholding the county's denial of Gurtek's special-use permit because legally sufficient reasons existed to support the denial, and these reasons had a factual basis in the record). Sunrise offers no authority to support its claim that the county must consider or adhere to findings made 14 years ago on a different application. To the contrary, the zoning ordinance provides for reapplication for an identical CUP six months after a denial. We conclude that the county was not bound by its earlier findings.

## DECISION

Because the county did not provide adequate reasons for granting the CUP, and the development described in the petition for a CUP meets the definition in the zoning ordinance of a prohibited manufactured home park, we hold that the county's grant of the CUP was unreasonable and arbitrary.

**Reversed.**