*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1911**

Brian Winczewski,
Relator,

vs.

Becker County Board of Commissioners, et al.,
Respondents,

Osage Sportsman Club, Inc.,
n/k/a Osage Sportsmens Club, Inc.,
Respondent.

**Filed August 1, 2016
Reversed
Klaphake, Judge**[*]

Becker County Board of Commissioners

James H. Perkett, Law Office of James Perkett, P.L.L.C., Park Rapids, Minnesota (for relator)

Scott T. Anderson, Rupp, Anderson, Squires & Waldspurger, PA, Minneapolis, Minnesota (for respondent Becker County Board of Commissioners, et al.)

Jonathan D. Frieden, Thomason, Swanson & Zahn, PLLC, Park Rapids, Minnesota (for respondent Osage Sportsman Club, Inc., n/k/a Osage Sportsmens Club, Inc.)

        Considered and decided by Reilly, Presiding Judge; Smith, Tracy M., Judge; and

Klaphake, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**U N P U B L I S H E D   O P I N I O N**

**KLAPHAKE**, Judge

Relator Brian Winczewski challenges respondent Becker County Board of Commissioner's (the county board) issuance of a conditional-use permit (CUP) allowing respondent Osage Sportsman Club, Inc. (the Club) to expand its shooting range, arguing that the county acted in an unreasonable, arbitrary, and capricious manner because it failed to make legally sufficient findings as set forth in the county zoning ordinance. Because neither the county board nor the Becker County Zoning and Planning Commission (planning commission) made sufficient findings to support its zoning decision, we reverse.

**D E C I S I O N**

A county board's decision on whether to issue a CUP is quasi-judicial and reviewable by an appellate court by writ of certiorari. *Interstate Power Co. v. Nobles Cty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn. 2000). The standard of review is a deferential one, as counties "have wide latitude in making decisions about special use permits." *Schwardt v. Cty. of Watonwan*, 656 N.W.2d 383, 386 (Minn. 2003). Appellate courts give more deference to a decision approving a CUP than to a decision denying one. *Id*. at 389 n.4. An appellate court will "review a county's decision to approve a CUP independently to see whether there was a reasonable basis for the decision, or whether the county acted unreasonably, arbitrarily, or capriciously." *Id*. at 386.

Counties are authorized to carry out planning and zoning activities for the purpose of promoting the health, safety, morals, and general welfare of its community. Minn. Stat.

§ 394.21, subd. 1 (2014). As a zoning tool, a CUP may be approved by a planning commission "upon a showing by an applicant that standards and criteria stated in the ordinance will be satisfied." Minn. Stat. § 394.301, subd. 1 (2014).

To show that Becker County acted unreasonably, relator must show that the county did not meet the zoning-ordinance standards and that granting the CUP was an abuse of discretion. *In re Block*, 727 N.W.2d 166, 177–78 (Minn. App. 2007). In determining whether the county acted unreasonably, an appellate court follows a two-step process: first we examine whether the reasons given by the county were legally sufficient; second, if the reasons are legally sufficient, we must determine whether "the reasons had a factual basis in the record." *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75–76 (Minn. 2015).

The Becker County Zoning Ordinance provides that no CUP shall be recommended or granted unless the planning commission or county board finds that the following criteria are met:

1. **[E]ffect on surrounding property**. That the conditional use will not harm the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish or impair property values within the immediate vicinity.

2. **[E]ffect on orderly, consistent development**. That establishing the conditional use will not impede the normal, orderly development and improvement of surrounding vacant property for uses predominant in the area.

3. **Adequate facilities**. That adequate utilities, access roads, drainage and other necessary facilities have been or are being provided.

4. **Adequate parking**. That adequate measures have been or will be taken to provide sufficient off-street parking and loading space to serve the proposed use.

5. **Not a nuisance**. That adequate measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration, so none of these will constitute a nuisance, and to control lighted signs and other lights so that no disturbance to neighboring properties will result.

Becker County, Minn., Zoning Ordinance (BCZO) ch. 8, § 11(F) (2015). In addition, because the Club's land is within 1,000 feet of a lake and is considered "shoreland," the county must find that (1) adequate measures are taken to prevent pollution of public waters, (2) visibility of structures from the water is limited, (3) the site has adequate utilities for a water supply and on-site sewage treatment, and (4) watercraft can safely be accommodated. *Id*. ch. 8, § 11(F)(6); BCZO ch. 10, § 2 (2015) (defining "shoreland").

The record establishes that neither the county board nor the planning commission issued formal findings. The record documenting the county's decision-making consists of the planning commission's October 13, 2015 meeting minutes and the county board's October 20, 2015 meeting minutes. Generally, findings are necessary for judicial review of a zoning decision. *Kehr v. City of Roseville*, 426 N.W.2d 233, 237 (Minn. App. 1988) (stating that the failure to provide findings inhibits effective judicial review), *review denied* (Minn. Sept. 16, 1988). A county board's failure to make critical findings required by a zoning ordinance is a "significant omission" because "a prima facie case of arbitrariness exists if the county board's decision is not accompanied by findings to show that its action was reached upon a consideration of the facts and was based upon reason rather than the mere individual whim of the members." *Crystal Beach Bay Ass'n v. Cty. of Koochiching*,

4

309 Minn. 52, 55, 243 N.W.2d 40, 42 (1976) (quotation omitted). This court has reversed a decision to issue a CUP when a county board simply accepted the planning commission's recommendation without a statement of reasons, and the planning commission's decision relied on inadequate findings. *Sunrise Lake Ass'n v. Chisago Cty. Bd. of Comm'rs*, 633 N.W.2d 59, 61-62 (Minn. App. 2001).

The county board's October 20, 2015 minutes, like those in *Sunrise Lake*, are insufficient because they include no reasons for granting the CUP. The county board's minutes reveal that the board simply voted to concur with the planning commission's decision. At the October 13, 2015 public hearing, the planning commission also failed to provide sufficient reasons for granting the CUP. The meeting minutes show that the planning commission failed to examine the list of standards set forth in the ordinance and failed to consider many of the ordinance's criteria. For example, despite significant concerns by community members and some commissioners, the planning commission made no findings as to whether the noise levels, safety issues, and increased use due to the expansion of the Club would harm the use and enjoyment of nearby residents' property, as required by BCZO ch. 8, § 11(F)(1). The planning commission also made no findings that the CUP would not impede the normal development of surrounding property for uses predominant in the area, per chapter 8, section 11(F)(2), an issue raised by one resident. Besides discussion of permits for storm-water drainage, there is no record that the planning commission considered the adequacy of the facilities for the Club's expansion, as required by chapter 8, section 11(F)(3). Parking and traffic were not discussed, as required by chapter 8, section 11(F)(4), although part of the CUP included a new parking area.

5

The planning commission discussed the noise issues surrounding the Club's expansion at the public hearing, but there is no evidence that measures adequate to prevent or control a nuisance have been or will be taken, as required by chapter 8, section 11(F)(5). Despite the noise concerns, the issued CUP contains no written condition that the Club must plant spruce trees, limit hours, or install fences for noise abatement before expansion. The minutes also show that the planning commission considered only the safety of the trapshooting lanes but not the expansion or rearrangement of the rifle range.[1]

An agency's decision is arbitrary or capricious if it entirely fails to consider an important aspect of the problem. *Pope Cty. Mothers v. Minn. Pollution Control Agency*, 594 N.W.2d 233, 236 (Minn. App. 1999). The planning commission acted unreasonably by failing to consider safety issues surrounding the expanded or rearranged rifle range—an important aspect of the problem in issuing the CUP—and by failing to place written conditions on the CUP to mitigate noise and safety concerns.

In regard to the Club's conversion of forestland within a "shoreland" area, which is permitted as a conditional use under BCZO ch. 6, § 7 (2015), Becker County made no findings that the chapter 8, section 11(F) criteria were satisfied, nor did it make findings that the land-alteration standards were met.

---

[1] The record conflicts as to whether the Club's 250-yard rifle range is an expansion, or rearrangement. Maps submitted with the CUP application show a longer range, and Club members referred to the changes as an "expansion" of the range at the public hearing. The CUP generally refers to an expansion of the shooting range, but specifically lists a "rearrangement of the 250-yard range."

Becker County argues, citing *Graham v. Itasca Cty. Planning Comm'n*, 601 N.W.2d 461, 467 (Minn. App. 1999), that even if the findings are inadequate, we may examine the record to determine if the evidence supports the county's decision. In *Graham*, "substantial evidence" existed in the record for this court to independently determine whether the appellant suffered hardship to qualify for a zoning variance. *Id*. But here, the record does not contain substantial evidence for us to independently determine whether the CUP application met the zoning-ordinance criteria. Becker County also cites *Haen v. Renville Cty. Bd. of Comm'rs*, in which this court said, "When an application for a special use permit is approved, the decision-making body has implicitly determined that all requirements for the issuance of the permit have been met." 495 N.W.2d 466, 471 (Minn. App. 1993), *review denied* (Minn. Mar. 30, 1993). However, in *Haen*, each commissioner orally listed the reasons for his or her decision, allowing this court to review the county's decision. *Id*. at 468. Furthermore, the ordinance in question in *Haen* did not require written findings of fact to support issuance of a CUP. *Id*. at 471. Here, the zoning ordinance requires the planning commission to report its findings and recommendations to the county board. BCZO, ch. 8, § 11(D) (2015). Unlike in *Graham* and *Haen*, we cannot ascertain from the record whether Becker County could reasonably find that the CUP requirements in the zoning ordinance were met.

In sum, because the Becker County issued the CUP without explaining why the zoning-ordinance criteria were satisfied, and because we cannot ascertain from the record whether the county could reasonably find that the CUP requirements in the zoning

7

ordinance were met, we reverse. Because we reverse for insufficient findings, we do not reach relator's additional arguments.

Finally, when a municipality's decision lacks any findings or explanations of its decision to facilitate judicial review, reviewing courts typically remand for additional fact finding. *See, e.g.*, *Earthburners, Inc. v. Cty. of Carlton*, 513 N.W.2d 460, 462 (Minn. 1994). But here, Becker County argues that aside from the forestland conversion, the zoning ordinance does not require that the Club, which is a nonconforming-use property, obtain a CUP in order to expand its shooting range. The interpretation of a zoning ordinance presents a question of law, which we review de novo. *Sunrise Lake Ass'n,* 633 N.W.2d at 62. The zoning ordinance does not list a shooting range as a permitted or conditional use in an agricultural zone. BCZO ch. 5, § 1 (2015). Because this issue was not raised on appeal, we express no opinion on whether the expansion of the Club involves uses that may be allowable under a CUP because they are "of the same general character" as those uses listed in the ordinance. *See id*. § 1(D) (providing that the Becker County Board of Adjustment may deem a use as "fitting and compatible" to a district where the specific use is not listed in the ordinance but is "of the same general character" of other listed uses). We also express no opinion on whether the Club's expansion is permissible under the nonconforming use section of the zoning ordinance, as this issue was not raised on appeal. Because Becker County argues that a CUP is not required for the Club's expansion, and we find nothing in the ordinance plainly allowing the Club to obtain a CUP for its proposed uses, additional fact finding on remand would be fruitless.

**Reversed**.