Dirk **GRAHAM**, Appellant,

v.

**ITASCA COUNTY PLANNING COMMISSION, Board of Adjustment and Itasca County, Respondent.**

No. C4–99–712.

Court of Appeals of Minnesota.

Oct. 26, 1999.

Craig S. Davis, Grand Rapids, MN (for appellant)

Jay T. Squires, Ratwick, Roszak & Maloney, P.A., Minneapolis, MN (for respondent)

Considered and decided by
TOUSSAINT, Presiding Judge,
LANSING, Judge, and KLAPHAKE, Judge.

## OPINION

LANSING, Judge.

The district court affirmed the Itasca County Board of Adjustment's denial of Dirk Graham's variance application. Graham appeals, asserting that the denial is arbitrary and capricious and that the governing ordinance violates the Equal Protection Clause of the Fourteenth Amendment. By notice of review, the board appeals the district court's holding that Graham's appeal was timely. We affirm.

## FACTS

The properties involved in this appeal are two adjoining lots located on Bonnie Point of Deer Lake in Itasca County. Dirk Graham purchased the two 100-foot lots from separate owners. When Graham purchased the property, the county zoning plan prohibited development of lake lots that were less than 200 feet wide, unless the land had been platted before the ordinance was adopted and continued to be owned separately. Adjacent, substandard lots owned by the same person, however, were considered to be a single lot for purposes of development.

Graham obtained a permit and began building on one lot in 1997. In May 1998, he applied for a variance to the Itasca County Board of Adjustment, seeking to build another structure on his adjoining lot. The board denied Graham's requested variance at its meeting on June 3, 1998, finding that Graham had failed to demonstrate hardship. Graham himself was not present at the meeting, but his representative was informed orally of Graham's right to appeal. On June 15, 1998, Graham received written notice from the county of the decision and of his right to appeal. Graham filed his appeal on July 13, 1998, within 30 days of the written, but not the oral, notice.

The district court held that Graham's appeal was timely, but granted summary judgment in the county's favor against Graham's substantive claims. Graham appeals the summary judgment, and the board challenges the district court's determination of timeliness.

## ISSUES

I. Does Minn.Stat. § 394.27, subd. 9 (1998), require written notice of a board of adjustment's variance decision to commence the running of the 30–day limitations period for appeal?

II. Does an ordinance prohibiting separate development of commonly owned adjacent substandard lots, but allowing development of adjacent substandard lots that are not commonly owned, violate the Equal Protection Clause of the Fourteenth Amendment?

III. Was the board's denial of Graham's variance application reasonable?

## ANALYSIS

### I

Whether written notice of a board of adjustment's variance decision is necessary to trigger the limitations period in Minn.Stat. § 394.27, subd. 9 (1998), is an issue of statutory construction. The construction of a statute raises a question of law, which this court reviews de novo. *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn.1996).

Under Minn.Stat. § 394.27, subd. 9, a person aggrieved by a decision of the board of adjustment may appeal to the district court within 30 days after receipt of notice of the board's decision:

> All decisions by the board of adjustment in granting variances * * * shall be final except that any aggrieved person * * * shall have the right to appeal within 30 days, *after receipt of notice of the decision,* to the district court * * *.

Minn.Stat. § 394.27, subd. 9 (emphasis added). The statute does not specify the type of notice required to trigger the running of the appeal period. The district court interpreted the statute to require written notice. The board challenges the district court's interpretation, claiming that actual notice of the board's decision,

even if only oral, is sufficient to start the appeal period. We disagree.

We have previously construed Minn. Stat. § 394.27, subd. 9, to require written notice. *In re Appeal of Saldana,* 444 N.W.2d 892, 893 (Minn.App.1989). In so doing, we reasoned that written notice may be implied when a statute is silent about the type of notice required and that a particular board's practice of notifying aggrieved parties in writing created a reasonable expectation that the appeal period began to run when an aggrieved party received written notice. *Saldana,* 444 N.W.2d at 893–94. We also noted that the aggrieved party did not become aware of the basis for the board's decision until it received written notice of it. *Id.* at 894.

*Saldana* is consistent with due process and with previous supreme court decisions construing similar statutes. *See Bahr v. City of Litchfield,* 420 N.W.2d 604 (Minn.1988); *In re Judicial Ditch No. 2,* 163 Minn. 383, 202 N.W. 52 (1925). Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties and afford them an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (holding that when names and post office addresses of those affected by a proceeding are at hand, notice by publication does not comport with due process). The notice must convey the required information and must afford a reasonable time for those interested to prepare adequately and to make their appearance. *Id.; Bliek v. Palmer,* 102 F.3d 1472, 1475 (8th Cir. 1997) (stating notice must apprise affected individual of, and permit adequate preparation for, impending hearing). The means employed to provide notice must be reasonably certain to inform those affected. *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657. Generally, written notice is more reasonably certain to inform aggrieved individuals of the basis for the board's decision. Oral notice is less likely to provide the information necessary to prepare for

appeal and to have the merits of their case fairly judged.

Previous supreme court decisions construing statutes similar to Minn.Stat. § 394.27, subd. 9, support a conclusion that the statute requires written notice of the board's decision. As early as 1925, the supreme court construed a statute limiting the time within which a writ of certiorari could issue to within 60 days after the aggrieved party "shall have received due notice" of the decision sought to be reviewed. *Judicial Ditch No. 2,* 163 Minn. at 383, 202 N.W. at 52. The court held that the due-notice requirement was not satisfied until the aggrieved party or his attorney received written notice of the decision. *Id.* It reasoned that written notice would eliminate disputes on whether a party had actual notice and establish a uniform rule of practice for writs of certiorari. *Id.*

More recently, the court, while recognizing that the term "due notice" must be defined in the context in which the requirement is imposed, stated that " 'due notice' requires, at a minimum, that notice be given in writing and that it be reasonably certain to reach the [affected individual]." *Bahr,* 420 N.W.2d at 607 (holding posted written notice constituted "due notice" when municipality apprised affected individuals that it would post notice, and all affected individuals read the posted notice).

We conclude that the written-notice requirement in *Saldana* is constitutionally sound and consistent with the rationale of the supreme court notice decisions. Several additional considerations convince us that *Saldana* correctly construed Minn. Stat. § 394.27, subd. 9. First, written notice comports with due process without unduly burdening the board of adjustment, which is already required to file a certified copy of its decision with the County Recorder or the Registrar of Titles. Minn. Stat. § 394.27, subd. 8 (1998). Second, written notice more definitely and unambiguously establishes the beginning of the

appeal period and would thereby reduce disputes over whether a party had actual notice. Third, written notice would establish a more uniform system of practice for writs of certiorari. *See, e.g.,* Minn. R. Civ.App. P. 116.01 (requiring written notice to commence limitations period for issuance of a writ of certiorari). Fourth, written notice would facilitate judicial review by providing aggrieved individuals with the basis for the decision sought to be reviewed. Last, the rules of civil procedure favor written notice in other contexts. *See* Minn. R. Civ. P. 77.04 (notice of filing of order to be served "by mail upon every party affected thereby or upon such party's attorney of record"). Relying on these reasons and the holding in *Saldana,* we conclude that the district court correctly held that the 30–day limitations period under Minn.Stat. § 394.27, subd. 9, began to run when Graham received written notice of the board's decision.

## II

■ The Equal Protection Clause guarantees "[n]o State shall * * * deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Absent an allegation that an ordinance discriminates on the basis of a suspect classification or fundamental right, zoning ordinances are reviewed under the rational-basis standard. *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Rational-basis review involves a two-step review: (1) identifying a legitimate governmental purpose, and (2) determining whether a rational basis exists for the governmental body to believe that the legislation would further the purpose. *Western & Southern Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Haves v. City of Miami,* 52 F.3d 918, 921–22 (11th Cir.1995).

■ Graham asserts that the Itasca County ordinance violates the Equal Protection Clause by creating an irrational

classification based on ownership. The ordinance limits the development of substandard lots:

Lots of record * * * which do not meet the requirements of this Ordinance shall be allowed as building lots, provided * * * the lot is in single and separate ownership from abutting lands at all times since it became substandard * * *.

A. If, in a group of two or more contiguous lots under the same ownership, any individual lot does not meet the [area] requirements * * * of this Ordinance the lot must not be considered as a separate parcel of land for the purposes of sale or development. The lot must be combined with the one or more contiguous lots so they equal one or more parcels of land * * *.

Itasca County, Minn., Zoning Ordinance Sec. 4.35 (1996, 1997). Thus, the ordinance creates an ownership-based classification, prohibiting separate development of commonly owned adjacent substandard lots, while allowing development of adjacent substandard lots that are not commonly owned. While the purpose of the ordinance is not expressed, its probable purpose is to phase out the substandard use by restricting the development of substandard lots.

■ The establishment of a standard lot size is a legitimate governmental zoning purpose. *See Pine County v. State, Dep't of Natural Resources*, 280 N.W.2d 625, 629 (Minn.1979) ("Restrictions such as * * * minimum lot sizes are common to zoning ordinances generally."). The gradual elimination of nonconforming uses is also a legitimate purpose. *See* Minn.Stat. § 394.36, subd. 2 (1998) (board may adopt ordinances to "reduce the number or extent of and provide for the gradual elimination of nonconformities"); *see also Hawkinson v. County of Itasca*, 304 Minn. 367, 373, 231 N.W.2d 279, 282 (1975) (approving of "well-established rule that nonconforming uses are to be restricted in a way which will be conducive to their ultimately

being phased out") (citation omitted). The merger of adjacent substandard lots owned by the same owner is a logical method to achieve these purposes. *See Wheeler v. City of Wayzata*, 533 N.W.2d 405, 410 (Minn.1995) (merger of adjacent property a legitimate factor in issuance of variances). Thus, the county is pursuing a legitimate governmental purpose based on a rational theory that the ordinance will further the declared purpose.

■ Graham asserts that the ordinance fails rational-basis scrutiny because the ordinance is based on "ownership rather than impact" and because the board failed to consider whether a second home would have a negative environmental impact. Ownership, however, is a permissible basis for zoning distinctions. *See Bonan Realty Corp. v. Young*, 16 Misc.2d 119, 182 N.Y.S.2d 132, 134 (N.Y.Sup.Ct.1958) (recognizing "property coming into common ownership so as to make compliance with the declared legislative policy possible" satisfies rational-basis standard). The distinction between those who own adjacent land and those who do not is justified because "the former can comply and use the open area for light, air and recreation, while the latter cannot." *Cabral v. Young*, 14 Misc.2d 550, 177 N.Y.S.2d 548, 549 (N.Y.Sup.Ct.1958).

Furthermore, the county need not demonstrate that its rational basis holds equally in every possible application. *See State by Rochester Ass'n of Neighborhoods v. City of Rochester*, 268 N.W.2d 885, 888 (Minn.1978) (holding ordinance should be upheld unless "the classification is unsupported by *any* rational basis") (emphasis added). The proper inquiry is not whether Graham's proposed home will have a negative impact on the environment, but whether the ordinance, on the whole, is rationally related to decreasing the number of substandard lots. In this case, the ordinance is rationally related to a legitimate government purpose and therefore does not violate the Equal Protection Clause.

## III

The standard of review applied to zoning matters is whether the governmental entity's action was unreasonable. *Honn v. City of Coon Rapids*, 313 N.W.2d 409, 414–15 (Minn.1981) (citing *Rochester Ass'n of Neighborhoods*, 268 N.W.2d at 888). When a governmental entity acts in a quasi-judicial capacity by receiving and weighing evidence and making factual findings, those actions are reasonable if supported by substantial evidence. *Hibbing Taconite Co. v. Minnesota Public Serv. Comm'n*, 302 N.W.2d 5, 9 (Minn.1980).

The board denied Graham's requested variance by stating only that he had shown "[n]o hardship problem." Generally findings are necessary for judicial review. *Kehr v. City of Roseville*, 426 N.W.2d 233, 237 (Minn.App.1988) (failure to provide findings inhibits effective judicial review), *review denied* (Minn. Sept. 16, 1988); 4 *Anderson's American Law of Zoning* § 22.44, at 128–29 (Kenneth H. Young, ed., 4th ed.1996) (findings show basis for decision and "permit intelligent judicial review"). But the absence of detailed findings is not fatal if substantial evidence in the record supports the board's application of the ordinance. *See Dedering v. Johnson*, 307 Minn. 313, 322, 239 N.W.2d 913, 919 (1976) (affirming board's denial of a variance when "the actions of the county board are based on substantial evidence"); *Kehr*, 426 N.W.2d at 237 (lack of findings does not shift rational-basis standard). The record contains substantial evidence on the ordinance, the lots, and on Graham's hardship arguments.

The application of an ordinance to established facts is a question of law for the court. *Frank's Nursery Sales v. City of Roseville*, 295 N.W.2d 604, 608 (Minn.1980); *Oswalt v. County of Ramsey*, 371 N.W.2d 241, 247 (Minn.App.1985) ("[T]he interpretation of zoning ordinances is a question of law that we must review independently."), *review denied* (Minn. Sept. 26, 1985). The reasonableness of a board's denial of a variance is measured by the standards set out in the applicable zoning ordinances. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 n. 6 (Minn.1983); *Rowell v. Board of Adjustment*, 446 N.W.2d 917, 921 (Minn. App.1989), *review denied* (Minn. Dec. 15, 1989). The Itasca board may grant a variance "where owing to special conditions a practical difficulty or particular hardship would be created" by strictly enforcing the ordinance. Itasca County Zoning Ordinance Sec. 10.24(1)(A). A "hardship" means

> that the property in question cannot be put to a reasonable use under the conditions allowed by this Ordinance; the plight of the landowner is due to circumstances unique to his property not created by the landowner; and the variance, if granted, will not alter the essential character of the locality.

Itasca County Zoning Ordinance Sec. 10.24(1)(B); *see* Minn.Stat. § 394.27, subd. 7 (defining hardship using substantially similar language).

Graham has the burden of demonstrating the variance is warranted due to hardship. Itasca County Zoning Ordinance Sec. 10.24(D); *see VanLandschoot*, 336 N.W.2d at 508–09 (board of adjustment has broad discretionary power to deny variance). To establish a hardship, a property owner must satisfy each part of the three-part test, including that the property owner's plight "is due to circumstances unique to his property." Graham's plight is not due to any circumstance unique to his lot; rather, it is due to his decision to purchase adjacent lots. *See Sibley v. Inhabitants of the Town of Wells*, 462 A.2d 27, 30 (Me.1983) ("Mere fact that lot is substandard is not a unique circumstance."); 2 *Anderson's American Law of Zoning* § 9.67, *supra* at 327 ("The requirement that substandard lots be combined may be regarded as imposing no unnecessary hardship."). Graham asserts undue hardship based on his belief that he could

develop the second lot. Just as knowledge of a zoning ordinance does not bar granting a variance, *Myron v. City of Plymouth,* 562 N.W.2d 21, 23 (Minn.App.1997) (holding that actual or constructive knowledge of a zoning ordinance before purchase of land is not a self-created hardship), *aff'd,* 581 N.W.2d 815 (Minn.1998), a landowner's mistaken belief about a zoning ordinance is not a bar to granting a variance. It does not follow, however, that a property owner's purchase of land based on an erroneous belief is a hardship because a property owner's beliefs are not circumstances unique to the property. A review of the record indicates that substantial evidence supports the board's denial of the variance and that the board acted reasonably in denying the variance.

■ Graham also asserts that the board erred by failing to consider practical difficulty as an alternate basis for granting a variance. Precedent has treated practical difficulty as a separate basis for granting a variance. *See Merriam Park Community Council, Inc. v. McDonough,* 297 Minn. 285, 292, 210 N.W.2d 416, 420 (1973) ("substantial evidence in this case [demonstrates] that sufficient practical difficulties existed to justify" variances), *overruled on other grounds by Northwestern College v. City of Arden Hills,* 281 N.W.2d 865 (Minn.1979). *But see Rowell,* 446 N.W.2d at 922 (considering practical difficulty as the first part in the three-part undue hardship test). Although practical difficulty may have been an alternative basis, Graham waived the issue by failing to raise it to the board or the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (appellate courts generally limit consideration to issues raised in the district court).

### DECISION

Graham timely appealed the denial of his requested variance. The board's denial is appropriate, however, because Graham failed to demonstrate an undue hardship and because the merger requirement in the zoning ordinances has a legitimate governmental purpose and is rationally related to accomplishing that purpose.

**Affirmed.**