John MOHLER, et al., Appellants,
Respondents,

v.

CITY OF ST. LOUIS PARK,
Respondent,

Michael G. Christianson, et al.,
Respondents, Appellants.

Nos. C9–01–1534, C9–01–1887.

Court of Appeals of Minnesota.

May 7, 2002.

Wayne G. Popham, Minneapolis, MN, (for appellants Mohler, et al.).

Susan M. Sager, St. Paul, MN, (for respondent City of St. Louis Park).

Karen E. Marty, Bloomington, MN, (for respondents Christianson, et al.).

Considered and decided by SHUMAKER, Judge, presiding, PARKER, Judge,[*] and DORIS OHLSEN HUSPENI, Judge.

## OPINION

DORIS OHLSEN HUSPENI, Judge.[*]

In this consolidated zoning appeal, the City of St. Louis Park granted Michael and Eileen Christianson a building permit to build a two-story garage and later granted a zoning variance for the garage. John and Karen Mohler, whose property abuts the Christiansons' property, sued the Christiansons and the city, seeking to have the variance overturned, to have a portion of the garage removed, and to receive an award of attorney fees from the city under 42 U.S.C. § 1983. The Christiansons filed a cross-claim alleging that the city incorrectly measured the garage, that the city was estopped from requiring them to change the structure, and the city was negligent in misrepresenting the zoning ordinance. The Christiansons sought dismissal of the Mohlers' complaint and an order estopping the city from requiring changes to the garage, or in the alternative, asked that the court find the city negligent in its interpretation and application of its ordinance and award the Christiansons damages to be paid by the city.

The Mohlers and the city moved for summary judgment; the district court denied the Mohlers' motion and granted that

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

of the city. The Mohlers appeal, asserting that (1) the city's grant of a variance is invalid and (2) they are entitled to attorney fees under 42 U.S.C. § 1983. The Christiansons also appeal, claiming that (1) the city's grant of a variance is valid because it satisfies the requirements of reasonableness, unique circumstances, and conformity with the essential character of the locality; (2) they are entitled to damages from the city due to the city's negligent misrepresentation of the ordinances; (3) they are entitled to a trial on their estoppel claim; and (4) the city's actions are not protected by statutory immunity or vicarious official immunity. We affirm in part, reverse in part, and remand.

### FACTS

In September 1998, the Christiansons applied for a permit to build a detached garage. Five pages detailing the building plans for the garage were included with the application for the permit. The plans show the intended total height of the garage to be 24 feet and show an intended upper loft level labeled "living space." The city granted the building permit.

In the fall of 1998, the Mohlers noticed large quantities of building materials being delivered to the Christiansons' property. In early December 1998, the Mohlers inquired at city hall about the Christiansons' garage. The city could not find copies of the plans but told the Mohlers that the garage did not have a second floor. The record shows the city had copies of the plans by December 14, 1998.

In February 1999, the partially constructed garage looked as if it had a second story. The Mohlers' attorney went to city hall and viewed the plans and later met with a city staff employee and discussed the plans. The employee agreed that the garage was too high and said he would notify the Christiansons. The following day, February 4, 1999, Mohlers' attorney returned to city hall, and the city staff employee stated he had informed the Christiansons of the matter. At this time, construction had not started on the second floor.[1] Meanwhile, Mohlers' attorney had the city's former planning director send a letter to the city that set out violations of the ordinance, namely that the setback requirement was not proper, the plans provided for living space that was not permitted by the ordinance, and the floor area in the structure would be too large.

On February 25, 1999, the city's zoning administrator, in responding to the Mohlers' attorney's letter, concluded that the height of the garage was 14.875 feet, which was below the maximum allowed under city ordinance and that the garage did not meet the definition of dwelling. The stated height was measured from the grade level of the east or street side of the garage to the midpoint of the east or street side gable.

Two factors added height to the zoning administrator's 14.875-foot calculation. First, the city discovered the roof overhang on the garage encroached into the required yard setback, and the removal of the overhang increased the structural height to 16 feet. Second, although the city denied the Christiansons' request in January 1999 to install a knee wall on the second floor, they did so anyway. As a result, on May 11, 1999, the city issued a stop work/violation notice. The addition of

---

1. The record also shows that during a site inspection in January 1999, the city's building inspector anticipated the height would be 15 feet, 6 inches, resulting in six inches above what the city believed the ordinance permitted at the time. The city indicated to the Christiansons that six inches was an "acceptable construction error." Thus, at a minimum, in January 1999, the Christiansons were aware their garage slightly exceeded the 15-foot height permitted by ordinance.

the knee wall increased the height of the structure to 17 feet.

Meanwhile, in March 1999, the Mohlers had appealed the city zoning administrator's determination of the height of the garage to the board of zoning appeals ("BOZA"). In April 1999, BOZA held a public hearing and determined that the zoning administrator interpreted the zoning ordinance correctly and that the garage did not exceed the maximum height. The Mohlers appealed BOZA's determination, and in June 1999, the city council considered the appeal. On June 7, 1999, the city council determined the city staff had improperly interpreted the ordinance and that the height should be measured from the front finished grade level (east or street side in this case) to the mean distance of the highest gable, which was the north gable, rather than the east or street-side gable that was used in the earlier measurements. This method of measurement changed the height of the building from 17 feet to 18 feet, 7 inches.

In late June or early July 1999, city staff sent a letter to the Christiansons informing them of the proper method of determining height, and that under that method, the garage was 18 feet, 7 inches and in excess of the 15 feet allowed by ordinance. On July 26, 1999, the Christiansons submitted an application for a variance for the 18–foot, 7–inch garage.

On July 30, 1999, the city sent the Christiansons a correction letter, which stated that maximum height allowed under the ordinance was 12 feet, not 15 feet. The city staff learned that in March 1998, the city passed an ordinance that reduced the height of garages and accessory structures located within two feet of a lot line abutting an alley or within five feet from any other lot line from 15 feet to 12 feet. The Christiansons' garage is located about 5 feet from the Mohlers' lot line but only three feet from the side property line.

In March 2000, after a public hearing, BOZA denied the Christiansons' variance request. On appeal by the Christiansons, the city granted a modified variance permitting the structure's height to be 16 feet, and required the Christiansons to bring the garage into compliance with the variance.

As a result of the grant of the variance, the Mohlers sued both the Christiansons and the city, seeking to have the variance overturned, to have a portion of the garage removed to bring it into compliance with the city code, and to receive an award of attorney fees from the city under 42 U.S.C. § 1983. The Christiansons cross-claimed, seeking dismissal of the Mohlers' complaint and an order estopping the city from requiring changes to the garage, or in the alternative, asking that the court find the city was negligent in its interpretation and application of its ordinance and award damages to the Christiansons.

Both the city and the Mohlers moved for summary judgment. The court, in awarding summary judgment to the city, concluded that (1) the city's decision to grant the variance was supported by a rational basis; (2) the city properly interpreted the height requirement in its zoning ordinance; (3) the Mohlers' claim for attorney fees under 42 U.S.C. § 1983 failed because they did not establish they had a property interest through the city's zoning laws; and (4) the Christiansons' claim against the city on negligence and estoppel grounds failed because it did not fall under the exception to the general rule that misinterpretations of zoning ordinances are not actionable and because the city is immune from tort claims based on exercise of a discretionary duty. This appeal followed.

## ISSUES

I. Did the district court err in determining that the city council's variance was supported by a rational basis?

II. Did the city council properly interpret its zoning ordinance in determining building height measurement?

III. Did the district court err in granting summary judgment in favor of the city on Mohlers' 42 U.S.C. § 1983 claim?

IV. Did the district court err in granting summary judgment in favor of the city on the Christiansons' claims under negligence and estoppel theories?

## ANALYSIS

On an appeal from summary judgment, an appellate court asks whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A court shall grant a motion for summary judgment

> when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law.

*Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). An appellate court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Id.* No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (quotation omitted).

## I. Variance

 A municipality has broad discretionary power when considering an application for variance. *VanLandschoot v. City of Mendota Heights*, 336 N.W.2d 503, 508 (Minn.1983). In considering zoning cases, an appellate court reviews the decision of the city council independent of the findings and conclusions of the district court, and regardless of whether the zoning matter was legislative or quasi-judicial, a reviewing court determines whether the municipality's action was reasonable. *Id.* An appellate court examines the action of the municipality to determine whether it was arbitrary or capricious, or whether the reasons articulated by the municipality do not have the "slightest validity or bearing on the general welfare," or whether the reasons were "legally sufficient and had a factual basis." *Id.*

The Mohlers argue that the city's grant of a variance is invalid because as a matter of law that variance cannot meet the requirements set forth in either the city code or Minn.Stat. § 462.357, subd. 6 (2000). In granting a modified variance that permitted a 16–foot structure rather than the 18–foot, 7–inch height requested by the Christiansons, the city council adopted the analysis of a city staff report. That report addressed each of the city ordinance's seven factors for granting a variance and concluded:

> Inasmuch as staff believes that none of the criteria are satisfied, it is recommended that the request to permit an accessory building with a height of 18 feet 7 inches instead of the maximum 12 feet be denied. Staff believes that the criteria has been met and does recommend that a variance to permit an accessory building with a height of 16 feet instead of the maximum 12 feet should be approved.

 Minn.Stat. § 462.357, subd. 6(2), provides that a zoning authority may grant a variance from the literal provisions of the ordinance where "strict enforcement would

cause undue hardship because of circumstances unique to the individual property" and "only when it is demonstrated that such actions will be in keeping with the spirit and intent of the ordinance." "Economic considerations alone shall not constitute an undue hardship if reasonable use for the property exists under the terms of the ordinance." *Id.* Under Minn.Stat. § 462.357, subd. 6(2), the three requirements for granting a variance under the undue hardship standard are: (1) reasonableness; (2) unique circumstances; and (3) the essential character of the locality. *Nolan v. City of Eden Prairie*, 610 N.W.2d 697, 701 (Minn.App.2000), *review denied* (Minn. July 25, 2000). All three requirements must be met to establish undue hardship. Minn.Stat. § 462.357, subd. 6. Accordingly, we consider whether the city's grant of a modified variance was reasonable.[2]

■ First, we consider whether the Christiansons' proposed use was reasonable. The statutory undue-hardship requirement "does not mean that a property owner must show the land cannot be put to any reasonable use without the variance." *Rowell v. Bd. of Adjustment of the City of Moorhead*, 446 N.W.2d 917, 922 (Minn. App.1989), *review denied* (Minn. Dec. 15, 1989). Rather, the property owners must show that they would like to use their property in a reasonable manner that is prohibited by the ordinance. *Id.*

The Christiansons want to use the structure as a garage with a playroom/office on the second level. The Mohlers assert that because the ordinance only permits garages with a height of 12 feet, a second-story living space area is prohibited. There is merit to this argument. In March 1998, when an ordinance reducing garage height from 15 feet to 12 feet was

adopted, the city rejected an ordinance that would allow second-story accessory apartments and offices in a detached garage. The Christiansons' garage is out of character with the surrounding neighborhood; other nearby residents do not use their property for a similar use. We conclude the proposed use is unreasonable.

■ Second, we consider whether the Christiansons' plight is one not created by them, but is attributable to circumstances unique to the property. The city asserts that unique circumstances exist because the city staff erroneously approved the building plans to construct a 16–foot garage. The Mohlers argue, however, that there is nothing unique about the property; that it is an ordinary rectangular city lot. We recognize initially that caselaw has interpreted the statute as not limited to the physical conditions of the land. In *Merriam Park*, the court recognized that such limitation would make granting of a variance "practically impossible except where the topographic conditions of a specific parcel of land would render the land in question otherwise valueless." *Merriam Park Cmty. Council, Inc. v. McDonough*, 297 Minn. 285, 290–91, 210 N.W.2d 416, 419–20 (1973), *overruled on other grounds by NW College v. City of Arden Hills*, 281 N.W.2d 865, 868 (Minn.1979).

■ The Merriam court noted that Minn.Stat. § 462.357, subd. 6, does not prohibit the granting of nonuse variances such as those of area, height, setback, density, and parking requirements, if the grant is in keeping with the spirit and intent of the ordinance. The variance in this case has features both of nonuse (height) and use (living space above the garage). While use variances allow a use

---

**2.** Although the city staff did not specifically address the statutory requirements set forth in Minn.Stat. § 462.357, subd. 6(2), the city staff addressed the requirements in its analysis of whether the requirements for a variance under the city ordinance were satisfied.

prohibited under the zoning ordinance, area or nonuse variances "control area, height, setback, density, and parking requirements for uses that are permitted by the ordinance." *Kismet Investors, Inc. v. County of Benton,* 617 N.W.2d 85, 90 (Minn.App.2000), *review denied* (Minn. Nov. 15, 2000). Unlike a use variance, a nonuse or area variance "does not change the character of the zoned district." *Appeal of Kenney,* 374 N.W.2d 271, 274 (Minn.1985) (citation omitted); *see also Kismet,* 617 N.W.2d at 90–91 (recognizing in Minnesota, "most use variances are prohibited by statute" but variance may be permitted when use is not prohibited in zoning district but is limited by another portion of zoning ordinance (citations omitted)). Even if we consider this variance to be nonuse only, the spirit and intent of the ordinance would not be met, because the structure is not consistent with the surrounding neighborhood.

We conclude, ultimately, that even if the unique circumstances requirement of the ordinance could be met other than by reference to the topography of the land,[3] the city's mistake in approving a 16–foot structure is not legally sufficient to be considered a unique condition under the statute. *See VanLandschoot,* 336 N.W.2d at 508 (recognizing appellate court examines city's action to determine whether reasons were legally sufficient and had factual basis). *Graham v. Itasca,* 601 N.W.2d 461 (Minn.App.1999), informs our decision here. In *Graham,* a developer purchased two substandard adjacent lots, mistakenly believing he could develop the second lot.

In affirming denial of a variance, this court stated:

> Just as knowledge of a zoning ordinance does not bar granting a variance, * * * a landowner's mistaken belief about a zoning ordinance is not a bar to granting a variance. It does not follow, however, that a property owner's purchase of land based on an erroneous belief is a hardship *because a property owner's beliefs are not circumstances unique to the property.*

*Id.* at 467–68 (emphasis added).

Even if the Christiansons' mistaken belief, based on the city's error, could be a proper factor to consider in granting a variance, we conclude, as did the court in *Graham,* that such mistaken belief is more properly considered under the first part of the three-part test (i.e., reasonableness). *See Rowell,* 446 N.W.2d at 922 (considering practical difficulty under first part of three-part test). Thus, even if the city's mistake might be considered as having "tipped" the reasonableness factor in the Christiansons' favor, they have still failed to establish the second requirement of the undue hardship test: unique circumstances.

The third statutory requirement in showing undue hardship cautions that the variance must not alter the essential character of the locality. The city adopted the staff's findings, which state:

> Staff believes the size of the existing garage is out of character with the neighborhood. A garage of this size is nowhere else to be found in this neigh-

---

**3.** We note, however, the importance of topography of the land under the plain language of the city's ordinance. As one of several factors, the ordinance permits a variance

[w]here by reason of narrowness, shallowness, or shape of a lot, or where by reason of exceptional topographical or water conditions or other extraordinary and exceptional conditions of such lot, the strict ap-

plication of the terms of this Ordinance would result in peculiar and practical difficulties or exceptional or undue hardship upon the owner * * *.

St. Louis Park, Minn., City Code § 14:8–3:3. Thus, even presuming the city's mistake could qualify under the statute, such mistake does not qualify under the plain language of the city's code.

borhood, and therefore deemed out of place. It is not certain whether or not this structure would impair the property values in the area, staff does not believe that it would. It has substantially changed the view from a nearby property and is more imposing on nearby properties than intended by the ordinance or approved plans. As mentioned before, a garage of this size is not common, and another one like it is not in this area. Staff believes that this criterion has not been satisfied. While the approved 16-foot height and restoration of the original design still exceeds ordinance requirements, staff does not believe it will have an unreasonable impact upon the neighborhood.

The record is devoid of any evidence indicating why an 18-foot, 7-inch garage would significantly alter the neighborhood's essential character, but a 16-foot garage would not (a conclusion that is all but inescapable when reviewing the staff report recommendation that an 18-foot, 7-inch garage would not meet ordinance requirements for a variance, but a 16-foot garage would). The record does not support the city's decision to grant a variance, and the district court erred in concluding the city's decision was reasonable.

Not only has the city failed to comply with the statutory factors required for granting a variance, it has failed to comply with its own city code. The St. Louis Park City Code, 14:8–3.3, sets forth the city's requirements for granting zoning variances and recognizes that the BOZA "shall consider the strict application of the provision of the Ordinance and the requirements of all applicable State Statutes."[4]

There is no evidence in the record to support the city's decision that the ordinance factors were all satisfied by a 16-foot garage, but that none were satisfied by a garage having a height of 18 feet, 7 inches. It is evident that the city's error in granting the original building permit constituted the sole basis for granting a variance permitting a 16-foot garage. We are aware of no authority recognizing such a basis as legally sufficient to support the variance granted here. Error by city staff does not constitute undue hardship under

---

4. The provision allows the BOZA to grant a variance from the strict application of the provisions of the ordinance provided that:

 1. Where by reason of narrowness, shallowness, or shape of a lot, or where by reason of exceptional topographical or water conditions or other extraordinary and exceptional conditions of such lot, the strict application of the terms of this Ordinance would result in peculiar and practical difficulties or exceptional or undue hardship upon the owner of such lot in developing or using such lot in a manner customary and legally permissible within the Use District in which said lot is located.
 2. Conditions applying to the structure or land in question are peculiar to the property or immediately adjoining property, and do not apply, generally, to other land or structures in the Use District in which the land is located.
 3. The granting of the proposed variance is necessary for the preservation and enjoy-

 ment of a substantial property right of the applicant.
 4. The granting of the proposed variance will not impair an adequate supply of light and air to the adjacent property, unreasonably increase the congestion in the public streets, increase the danger of fire, or endanger public safety.
 5. The granting of the variance will not unreasonably impact on the character and development of the neighborhood, unreasonably diminish or impair established property values in the surrounding area, or in any other way impair the health, safety, and comfort of the area.
 6. The granting of the proposed variance will not be contrary to the intent of this Ordinance and the Comprehensive Plan.
 7. The granting of a variance will not merely serve as a convenience to the applicant but is necessary to alleviate a demonstrable undue hardship or difficulty.

the statute or the ordinance,[5] and the variance in this case was improperly granted.

■ Generally, reversal of an award of summary judgment would require a remand for trial. However, we conclude as a matter of law that the record does not contain a legally sufficient reason to grant the variance. Therefore, we reverse and remand with instructions for the district court to award summary judgment to the Mohlers on the issue of the grant of the variance. *See Sunrise Lake Ass'n, Inc. v. Chisago County Bd. of Comm'rs,* 633 N.W.2d 59, 62 (Minn.App.2001) (reversing grant of CUP application on certiorari appeal because record before board did not provide a lawful basis for granting CUP on present application).

■ Finally, a "property owner injured by [a permit issued in violation of city ordinance] is entitled to injunctive relief." *Lowry v. City of Mankato,* 231 Minn. 108, 117, 42 N.W.2d 553, 560 (1950); *see also McCavic v. De Luca,* 233 Minn. 372, 46 N.W.2d 873 (1951) (concluding where defendant erected business building that extended seven feet into space prohibited by setback provisions of city ordinance, owners of adjoining residence property were entitled to mandatory injunction requiring removal of portion of building extending beyond setback line). Here, the city issued a permit to the Christiansons in violation of the city code. Because we have concluded that the variance exceeded the requirements of both statute and ordinance, and that the Mohlers are entitled to summary judgment on this issue, we direct the district court to order the city to take action to enforce the terms of the city's ordinance requiring that a garage be no more than 12 feet in height.[6]

## II. Height Measurement

■ The Christiansons argue that the city council improperly interpreted the height requirement in its zoning ordinance to require a measurement from the highest gable rather than the street-side gable.

This is an appeal from an award of summary judgment, and the material facts relevant to this analysis are not in dispute. Therefore, we consider whether the district court erred as a matter of law in finding the city's interpretation of the ordinance's height requirements reasonable.

■ In construing a zoning ordinance, appellate courts generally focus on three rules of construction: (1) the ordinance should be construed in accordance with the plain and ordinary meaning of its terms, (2) the ordinance should be construed strictly against the governmental entity and in favor of the property owner, and (3) the ordinance must be considered in light of its underlying policy. *SLS P'ship v. City of Apple Valley,* 511 N.W.2d 738, 741 (Minn.1994); *Frank's Nursery Sales, Inc. v. City of Roseville,* 295 N.W.2d 604, 608–09 (Minn.1980). But where the meaning of an ordinance or statute is free from ambiguity, there is no room for construction. *Glen Paul Court Neighborhood Ass'n v. Paster,* 437 N.W.2d 52, 56 (Minn. 1989). An ordinance is ambiguous if it is susceptible to two or more meanings. *Hamline–Midway Neighborhood Stability Coalition v. City of St. Paul,* 547 N.W.2d

---

**5.** The Christiansons also argue that the city should have granted the variance at 18 feet, 7 inches instead of 16 feet. Because we agree with the city's conclusion that none of the seven ordinance factors were satisfied by a garage of 18 feet, 7 inches, we also agree that the city's decision not to grant a variance at that height was reasonable.

**6.** While we recognize that this decision will require alteration to the existing structure, we trust that the burden of that alteration will be minimized in view of the fact that the city's grant of a 16–foot variance would likewise have required alterations to the existing structure.

396, 399 (Minn.App.1996), *review denied* (Minn. Sept. 20, 1996). Only if the court determines that an ordinance is ambiguous, should the court ascertain the legislative intent behind the ordinance and construe it so as to effectuate that intent. *In re Welfare of A.L.F.*, 579 N.W.2d 152, 155 (Minn.App.1998).

The city ordinance defines "building height" as

[a] distance to be measured from the mean curb level along the front lot line or from the finished grade level for all that portion of the structure having frontage on a public right-of-way whichever is higher to * * * *the mean distance of the highest gable on a pitched or hip roof.*

(Emphasis added.) Here, the ordinance is unambiguous; it states "highest gable." The reference to the frontage on a public right-of-way only involves the first measurement point. For a pitched roof, the type at issue here, the second measurement point is the distance to the highest gable. "Highest gable" is susceptible to only one meaning—the highest gable. The ordinance is not ambiguous. We do not look beyond the words of the ordinance, and find, therefore, that the city's decision to measure to the highest gable was reasonable. *See VanLandschoot*, 336 N.W.2d at 503 (reviewing court determines whether the municipality's action was reasonable). The award of summary judgment to the city on this issue was proper.

### III. Attorney Fees Under 42 U.S.C. § 1983

The Mohlers also claim that they are entitled to attorney fees under 42 U.S.C. § 1983.[7]

In order to establish a section 1983 claim, the Mohlers must establish that they have been deprived of a right, privilege, or immunity secured by the constitution or law of this state by any person acting "under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory." *Gomez v. Toledo*, 446 U.S. 635, 638, 100 S.Ct. 1920, 1922–23, 64 L.Ed.2d 572 (1980)(quotation omitted). A substantive due process claim under 42 U.S.C. § 1983

in the zoning context exists, if at all, only in the extraordinary situations and will not be found in "run-of-the-mill" zoning disputes.

*Northpointe Plaza v. City of Rochester*, 465 N.W.2d 686, 689 (Minn.1991). To establish such a claim, the court considers (1) "whether there has been a deprivation of a protectible property interest," and (2) "whether the deprivation results from an abuse of governmental power sufficient to state a constitutional violation." *Id.*

State law and the city's ordinance recognize that certain adjacent property owners can sue to require enforcement of the zoning laws. *See, e.g, Lowry v. City of Mankato*, 231 Minn. at 117, 42 N.W.2d at 559 (1950). It does not necessarily follow, however, that this right confers a protectible property interest for purposes of the substantive due process clause and 42 U.S.C. § 1983. Minnesota law has recognized that zoning ordinances do not create a property right in adjacent landowners:

[S]etback lines or building lines do not really create an easement in the strict legal sense. * * * The effect of setback lines and open yards and spaces in zoning ordinances is merely to regulate the

7. The city argues that no duty is owed to the Mohlers, and thus, they cannot maintain a negligence claim against the city. A review of the record indicates, however, that the Mohlers did not request damages under a negligence theory, but rather under the theory that the city violated 42 U.S.C. § 1983. Accordingly, we need not decide whether the city owed a duty to the Mohlers.

use of property. It gives no beneficial use to another, except as light and air may rest undisturbed in the space where structure are prohibited. This restriction of use is based upon the exercise of the police power for the general welfare, and is not based on contract rights or the exercise of the power of eminent domain.

*McCavic*, 233 Minn. at 378, 46 N.W.2d at 876 (quotation omitted). Although *McCavic* involved setback lines, we find the rationale of that case applicable to the height requirement at issue here. Accordingly, we conclude the Mohlers have not established that the city deprived them of a property right.

▬ Even assuming for the sake of further analysis that the Mohlers could establish deprivation of a property right, in the zoning context,

> [w]hether government action is arbitrary or capricious within the meaning of the Constitution turns on whether it is so egregious and irrational that the action exceeds standards of inadvertence and mere errors of law.

*Northpointe*, 465 N.W.2d at 689 (citation omitted). "Egregious," "irrational," or "extraordinary" have not been precisely defined. *Id.* at 691.

Here, the city did not act in an exemplary manner. It failed initially to retain copies of the Christiansons' plans, and erroneously informed the Mohlers that the garage did not contain a second story. Months later, when it became apparent that the structure did contain a second story, and the Mohlers complained to the city that the ordinance was being violated, the city made little effort to address the issue. Had the city acted more promptly, expenses caused to the Christiansons could have been minimized, and the Mohlers would have avoided the expense incurred

in taking legal action. We are not insensitive to the toll, both financial and emotional, this litigation has imposed upon both the Christiansons and the Mohlers. Neither are we unaware that the city could foresee, unfortunately, that whatever its decision on the variance question, there was a likelihood that future legal action would ensue; initiated by either the Christiansons or the Mohlers, if not both. Nonetheless, we must apply the law in reviewing the record and resolving the issues as they are presented to us; much as we might wish that circumstances had been such as to enable all of these parties to avoid legal proceedings.

*Northpointe* cautioned:

> At the municipal level of government, zoning decisions are made daily and frequently. To allow the loser of each zoning decision, both those who seek a change and those who seek to block changes, to sue in federal court on bald allegations of arbitrariness would significantly burden both federal courts and local zoning decisionmakers.

*Id.* at 690 (quoting *Queen Anne Courts v. City of Lakeville*, 726 F.Supp. 733 (D.Minn.1989)). In *Queen Anne*, the court determined that the plaintiffs' allegations that the city caved in to neighborhood opposition, ignored its owns studies, and had no factual basis for its decision did not rise to the level of egregious and irrational conduct that would state a federal substantive due process claim. 726 F.Supp. at 738. Likewise, in *Northpointe*, the court concluded the city actions were not egregious and irrational and did not state a substantive due process claim, despite the city's reliance on an expert with an obvious conflict of interest, and rejection of the only credible expert studies and recommendations. 465 N.W.2d at 691. Although we recognize in this case the regrettable conduct of the city, our reading of *Queen Anne* and *Northpointe*[8] compels

---

**8.** Arguably, the actions of the municipalities

in those cases (actions found not egregious

a conclusion that the city's merely negligent misrepresentation of the law did not rise to the level of egregious and irrational conduct that would support a substantive due process claim. Accordingly, we affirm the award of summary judgment to the city on this issue.

### IV. Christiansons' Claims

The Christiansons, in their appeal, argue that (1) they are entitled to a trial on their damage claim against the city due to the city's negligent misrepresentation of the ordinances, (2) they are entitled to a trial on their estoppel claim, and (3) the city's actions are not protected by statutory immunity or vicarious official immunity.

### A. Negligent Misrepresentation

Because this is an appeal from a district court's order granting summary judgment, we assume the allegations in the Christiansons' complaint are true and consider if the Christiansons have established a cause of action against the city for negligence. *Northernaire Prods. Inc. v. Crow Wing County*, 309 Minn. 386, 389, 244 N.W.2d 279, 281 (1976).

 Negligent misrepresentation of fact is actionable against government officers and employees, because members of the public have no other access to factual information maintained by the government except through those individuals. *Id.* at 390, 244 N.W.2d at 282. Misrepresentations of law, in contrast, are not actionable. *Id.* at 388–89, 244 N.W.2d at 281. The Christiansons assert that the city's representations constituted a negligent misrepresentation of fact, not a misrepresentation of law. We cannot agree. The record establishes that the city on several occa-

sions interpreted the ordinance for the Christiansons. There is no indication that the city made any representations of fact. Thus, we conclude that any misrepresentation by the city was one of law and, as such, not actionable.

 Even if we were to interpret the city's misrepresentation as one of fact, however, we would conclude that summary judgment on this issue was proper. The Christiansons assert that the March 1998 ordinance, which reduced the permissible garage height from 15 feet to 12 feet, was not included in the city's codified ordinances. They claim instead that the city provided a flyer dated May 7, 1998, detailing requirements for building a garage or storage shed, but that flyer did not incorporate the March 1998 height reductions. The record, however, does not contain the flyer described by the Christiansons; it does contain a flyer titled "Building a Storage Shed in St. Louis Park," whose only reference to size states "if the building exceeds 120 square feet use the requirements for building a garage." The record contains no flyer pertaining to garages.

We recognize that whether the March 1998 ordinance was available to the Christiansons is a fact issue, and that negligence is rarely decided by summary judgment. *Brittain v. City of Minneapolis*, 250 Minn. 376, 84 N.W.2d 646 (1957). "Any doubt as to whether issues of material fact exist [must be] resolved in favor of the party against whom summary judgment was granted." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995) (citation omitted). But

> there is no genuine issue of material fact for trial when the nonmoving party pres-

---

enough to support an award under section 1983) were harsher than those of the city here. *Northpointe* involved denial of a conditional use permit to appellant and subsequent issuance to another applicant. 465 N.W.2d at

686. *Queen Anne* involved the city's refusal to permit expansion of a mobile home park onto adjoining undeveloped parcels owned by the applicant. 726 F.Supp. at 735.

ents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.

*DLH,* 566 N.W.2d at 71. We conclude that the Christiansons have failed to provide sufficient evidence to establish that they did not have access to the March 1998 ordinance or that it was not included in the city's codified ordinances.

Further, whether the city employees who issued the building permit knew of the ordinance is not relevant to whether the Christiansons had access to the ordinance. *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 786–87 (Minn.1989). In *Snyder,* city employees approved a permit that "clearly failed to satisfy" the off-street parking requirements in the city ordinance. *Id.* The court, citing *Anderson v. City of Minneapolis,* 287 Minn. 287, 178 N.W.2d 215 (1970), noted that "city employees who approved the permit did not have discretion to approve permits in clear violation of the law," and that in such situations the "permit issuee would be charged with knowledge of the law regulating the granting of building permits." *Snyder,* 441 N.W.2d at 787. The supreme court carved out a "narrow exception" to the rule of discretionary immunity, however, and concluded that damages could be recovered in that case because the city's policy against using publicly dedicated parking to satisfy the ordinance's off-street parking requirement was an unwritten policy, and thus, the party to whom the permit was issued could not be charged with the knowledge of the illegal nature of his proposed land use. *Id.*

The Christiansons argue that they fall under the narrow exception carved out in *Snyder.* We disagree. Unlike *Snyder,* the ordinance in this case was written; it was signed by the mayor, the city clerk, and the city manager.

The Christiansons have not established a claim against the city for damages based on negligence. Therefore, we affirm the award of summary judgment to the city on this claim.

**B. Estoppel**

The Christiansons next argue that they are entitled to a trial on their claim that estoppel prevents the city from requiring that they reduce the height of their garage. We cannot agree. While the result may be harsh, a "municipality cannot be estopped from correctly enforcing the ordinance even if the property owner relied to his detriment on prior city action." *Frank's Nursery,* 295 N.W.2d at 607. The asserted basis for the Christiansons' estoppel claim is the same as the basis for their negligence claim (i.e., storage shed flyer, allegation that the city did not codify the ordinance). We conclude that there is insufficient evidence to create a material fact question to present to a fact-finder on this issue. *DLH,* 566 N.W.2d at 71. Accordingly, we affirm the award of summary judgment to the city on the estoppel issue.

**C. Immunity**

Finally, the Christiansons assert that the district court erred in granting summary judgment in favor of the city based on the city's defense of statutory and vicarious immunity. Whether discretionary immunity applies is a question of law for an appellate court to review without deference to the trial court. *Snyder,* 441 N.W.2d at 786. If the city decisions challenged by appellant are protected by immunity, the city is entitled to judgment as a matter of law, and the district court's grant of summary judgment was proper.

*Watson by Hanson v. Metro. Transit Comm'n,* 553 N.W.2d 406, 416 (Minn.1996).

Although Minnesota's Tort Claims Act in Minn.Stat. ch. 466 (2000) generally allows governmental entities to be held liable for their torts, the Act contains a "discretionary function" exception. Minn.Stat. § 466.03, subd. 6, provides that a public corporation and political subdivision are not liable for their torts and those of their employees acting within the scope of their employment for

> [a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

Minn.Stat. § 466.03, subd. 6.

Under Minnesota caselaw, issuance of a building permit is discretionary. *Anderson v. City of Minneapolis,* 287 Minn. 287, 288, 178 N.W.2d 215, 217 (1970) (concluding act of city employee in issuing the building permit involved an exercise of discretion in sense that employee had to make judgment about whether submitted plans constituted permissible use of the property in the area involved). Taking the evidence in the light most favorable to the Christiansons, as we must do, they have failed to show that the city was not exercising discretion in granting the building permit. Accordingly, we conclude that summary judgment for the city was properly awarded on the issue of statutory immunity.

Because we have concluded that the city is entitled to statutory immunity, we need not consider whether the city is also protected under the doctrine of official immunity. We note, nonetheless, that determinations made by city personnel on the question of whether proposed building plans met ordinance requirements involved the exercise of discretion, and did not constitute mere ministerial action.

## DECISION

The city's decision that error by city staff constituted hardship within the meaning of Minn.Stat. § 462.357, subd. 6 (2000), was unreasonable. We remand for an award of summary judgment to the Mohlers and enforcement of the city ordinance's 12–foot garage height requirement. The city's interpretation of the garage height measurement calculation is reasonable, and summary judgment for the city on this issue was proper. The city did not deprive the Mohlers of a property right sufficient to maintain a 42 U.S.C. § 1983 claim, and summary judgment for the city was appropriate on that claim. Summary judgment was awarded properly on the Christiansons' negligence and estoppel claims because there are no material fact questions in either. The city's actions are protected by statutory immunity; therefore, an award of summary judgment in favor of the city on that basis was proper.

**Affirmed in part, reversed in part, and remanded.**